UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE COTE

---------------------------------------------------------------------------x

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

Plaintiff,

-against-

HARLEYSVILLE PREFERRED INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, and THE ELECTRICAL EMPLOYERS SELF INSURANCE SAFETY PLAN,

Defendants.

---------------------------------------------------------------------------x

Civil Action No.

15 CV 4175

**COMPLAINT**

RECEIVED
JUN 01 2015
U.S.D.C. S.D.N.Y.

**M A D A M S/S I R S:**

Plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU ("Wausau"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendants HARLEYSVILLE PREFERRED INSURANCE COMPANY ("Harleysville"), THE TRAVELERS INDEMNITY COMPANY ("Travelers"), and THE ELECTRICAL EMPLOYERS SELF INSURANCE SAFETY PLAN ("EESISP"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2. At all times hereinafter mentioned, Wausau was, and still is, an insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02117.

3. At all times hereinafter mentioned, Wausau was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, Harleysville was, and still is, an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business located at 355 Maple Avenue, Harleysville, Pennsylvania 19438.

5. Upon information and belief, at all times hereinafter mentioned, Harleysville was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6. Upon information and belief, at all times hereinafter mentioned, Travelers was, and still is, an insurance company organized under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford Connecticut 06183.

7. Upon information and belief, at all times hereinafter mentioned, Travelers was, and still is, an insurance company duly authorized to conduct business within the State of New York.

8. Upon information and belief, at all times hereinafter mentioned, EESISP is a group self-insured trust created and duly organized under the laws of the State of New York, with its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York.

9. Upon information and belief, as of the commencement of this suit, none of the trustees of EESISP are residents or domiciliaries of the States of Wisconsin or Massachusetts for purposes of diversity jurisdiction.

10. Upon information and belief, EESISP is duly authorized to provide worker's compensation insurance to Local Union No. 3 members and their employers within the State of New York.

11. Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391.

## SUBSTANTIVE ALLEGATIONS

12. On or about November 17, 2014, an action entitled Rosanne Cavataio, as Executrix of the Estate of Nicholas Cavataio and Rosanne Cavataio, Individually v. Metropolitan Transportation Authority, Eaton Corp., Miller Auto Leasing Corp., Monarch Electric Company and Triborough Bridge and Tunnel Authority, Index No. 25425/2014, was commenced in the Supreme Court of the State of New York, County of Bronx (the "Underlying Action").

13. In the Underlying Action, Rosanne Cavataio, Individually and as Executrix of the Estate of Nicholas Cavataio (the "Estate") alleges that she was appointed as the Executrix of the Estate of Nicholas Cavataio ("Cavataio") on August 29, 2014.

14. In the Underlying Action, the Estate alleges that Metropolitan Transit Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA"), each owned a certain lot or parcel of land located at 4260 Throgs Neck Expressway, Bronx, New York (the "Project").

15. In the Underlying Action, the Estate alleges that, on August 5, 2014, Cavataio, while working for Hellman Electric Corporation ("Hellman") on the Project, was fatally injured (the "Accident").

16. The Estate alleges that Hellman had a contract with the MTA and the TBTA.

17. In the Underlying Action, the Estate alleges that defendants Monarch Electric Company ("Monarch") and Miller Auto Leasing Corp, a/k/a Miller Truck Leasing Company ("Miller") were the owner(s) of a motor vehicle bearing New Jersey State license plate number XAPU46 (the "Miller Truck").

18. Upon information and belief, the Miller Truck which was owned by Miller, but was leased to Monarch at the time of the Accident.

19. In the Underlying Action, the Estate alleges that the Accident was caused by the negligence of all defendants, including, Monarch and Miller.

20. On or about August 26, 2014, the Estate served a Notice of Claim upon the City of New York, the MTA and the TBTA.

21. The Estate alleges that, on August 5, 2014, Cavataio was an employee of Hellman, and was present and working on the Project when he was fatally injured.

22. On or about January 15, 2015, in the Underlying Action, the MTA and the TBTA commenced a third-party action against Hellman, seeking common law contribution and indemnity and contractual indemnity.

23. In the third-party action, the MTA and the TBTA allege that the TBTA entered into a written contract with Hellman, whereby Hellman agreed to supply and to perform certain work, labor and/or services for the Project.

24. Prior to August 5, 2014, the TBTA and/or the MTA entered into a contract known as No. TN Task 26 entitled Furnish, Deliver and Install an Integrated Electronic Security System at the Throgs Neck Bridge (the "Contract").

25. Pursuant to the Contract, Hellman, as Contractor, was to provide all work and furnish all materials, labor, equipment, and other items necessary to complete the installation of cameras for the Project.

26. Upon information and belief, at the time of the Accident, Cavataio was acting in the course of his employment with Hellman on the Project pursuant to the Contract.

27. The Contract provides in relevant part, as follows:

7. INSURANCE.

ARTICLE 6.05 REQUIRED INSURANCE

The Contractor shall procure, at its sole cost and expense, and shall maintain in force at all times during this Contract through completion of the contractual warranty period, policies of insurance as set forth in APPENDIX J, INSURANCE REQUIREMENTS.

* * *

1. Workers' Compensation Insurance (including Employer's Liability Insurance limits of not less than $2,000,000 which limit may be met by a combination of primary and excess insurance) meeting the statutory limits of New York State. The policy shall be endorsed

to include Longshore and Harbor Workers' Compensation and/or Maritime Coverage(s), when applicable.

* * *

2. Commercial General Liability Insurance (I. S. O. 2001 Form or equivalent approved by the Authority in the Contractors name with limits of liability specifically written for this Contract in the amount of at least the amount set forth in Paragraph A above $5,000,000 General Aggregate Limit (other than products-completed operations)/$5,000,000 Products/Completed Operations Aggregate Limit on a combined single limit basis for injuries to persons (including death) and damage to property. The limits may be provided in the form of a primary policy or combination of primary and umbrella excess policy. When the minimum contract amounts can only be met when applying the umbrella excess policy, the umbrella excess policy must follow form of the underlying policy and be extended to "drop down" to become primary in the event primary limits are reduced or aggregate limits are exhausted. Such insurance shall be primary and non-contributory to any other valid and collectible insurance and must be exhausted before implicating any Authority/MTA policy available.

Such policy should be written on an occurrence form, and shall include:

- Contractual coverage for liability assumed by the Contractor under this agreement;
- Personal and Advertising Injury Coverage;
- Products-Completed Operations extending at least one year after project completion;
- Independent Contractors Coverage;
- "XCU" coverage (Explosion, Collapse, and Underground Hazards) where necessary;
- Additional Insured Endorsement (I.S.O. Form CG 20 10 1185 version are equivalent approved by the Authority naming Triborough Bridge and Tunnel Authority (TBTA), Metropolitan Transportation

Authority (MTA) and its subsidiaries and affiliates and the State of New York.

* * *

3. Business Automobile Liability Insurance Policy (I.S.O. Form CA 00 01 10 01 or equivalent approved by the Authority) if vehicle enters the Authority's property or is used as part of service provided, in the Contractor's name with limits of liability of at least $2,000,000 each accident for claims for bodily injuries (including death) to persons and for damage to property arising out of the ownership, maintenance or use of any owned, hired or non-owned motor vehicle.

28. Wausau issued a Commercial General Liability Policy, No. TBC-Z21-093853-014, with a policy period from June 27, 2014 to June 27, 2015, to Hellman as the first Named Insured (the "Wausau Policy").

29. The Wausau Policy contains an applicable excess "Other Insurance" provision.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
(Against Harleysville)

30. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "29" of this Complaint as if more fully set forth herein.

31. Upon information and belief, Hellman complied with its obligations under the Contract, in part, by obtaining business automobile liability insurance from Harleysville.

32. Upon information and belief, in connection with the Contract, Hellman provided the TBTA a certificate of insurance naming Harleysville as the provider

of business automobile liability coverage under Policy, No. BA00000019507L, with a policy period of June 27, 2014 to June 27, 2014 (the "Certificate of Insurance").

33. The Certificate of Insurance specifically refers to the Contract, and Harleysville's Policy identifies any auto as a "covered auto" regardless of ownership.

34. Pursuant to the Certificate of Insurance, Harleysville's policy also covers hired autos, owned autos, and non-owned autos.

35. Upon information and belief, Harleysville issued Business Automobile policy, No. BA00000019507L, with a policy period from June 27, 2014 to June 27, 2015, to Hellman, as the first Named Insured (the "Harleysville Policy").

36. Upon information and belief, the Harleysville Policy has the following insuring agreement:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

37. Upon information and belief, the Harleysville Policy defines who is an insured, in sum or substance, as follows:

> 1. **Who is An Insured**
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> (1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not

apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your employees or partners (if you are a partnership), a member (if you are a limited liability company), a lessee or borrower or any of their "employee" while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

38. In the Underlying Action, the Estate alleges a claim for which the MTA and the TBTA qualify as insureds under the Harleysville Policy.

39. In the Underlying Action, the MTA and the TBTA allege a claim for which Hellman qualifies as an insured under the Harleysville Policy.

40. Upon information and belief, on or about August 6, 2014, Hellman and/or Hellman's agent notified Harleysville of the Accident.

41. Upon information and belief, the MTA, on its own behalf and behalf of the TBTA, notified Harleysville of the Accident.

42. By letter dated August 27, 2014, Harleysville acknowledged receipt of notice of the Accident by Hellman and the MTA and/or the TBTA.

43. In said letter, Harleysville disclaimed any duty to defend or indemnify the MTA, the TBTA, and Hellman for the Underlying Action.

44. The sole basis for the August 27, 2014 disclaimer was that the vehicle involved was not used, owned, or maintained by Hellman.

45. Harleysville failed to raise any other basis for its disclaimer of coverage, and thereby waived and is estopped from asserting any other basis for denying coverage to the MTA, the TBTA, and Hellman for the Underlying Action.

46. By letter dated February 25, 2015, Wausau responded to Harleysville's August 27, 2014 disclaimer, requesting that Harleysville reconsider its coverage position and arguing that the claim triggers the additional insured coverage afforded under the Harleysville Policy because: (1) the truck in question was used by Hellman within the meaning of the Harleysville Policy, and (2) the MTA and the TBTA, which have been sued for vicarious liability for the conduct of Hellman, qualify as insureds under the Harleysville Policy.

47. To date, Harleysville has not accepted the tender.

48. Harleysville has failed and refused to provide the defense to Hellman, the MTA, and the TBTA for the claims alleged in the Underlying Action.

49. Harleysville has, to date, wrongfully declined to provide coverage for Hellman, the MTA, and the TBTA for the Underlying Action.

50. By failing to timely disclaim coverage, Harleysville waived and/or is estopped from raising any conditions or exclusions as a defense to coverage.

51. Based on their respective "Other Insurance" provisions, the coverage provided by the Wausau Policy to Hellman, the MTA, and the TBTA for the Underlying Action is excess to the coverage provided by the Harleysville Policy.

52. As a result of Harleysville's breach of its duty to defend, Wausau has been forced to drop down and provide a defense to Hellman for the Underlying Action.

53. Wausau seeks a determination of its rights with regard to the Harleysville Policy, including a declaratory judgment that Harleysville is required to defend and indemnify the MTA, the TBTA, and Hellman for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy applies to MTA, the TBTA, and Hellman, for the Underlying Action.

54. Wausau has no adequate remedy at law.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
(Against Travelers)

55. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "54" of this Complaint as if more fully set forth herein.

56. Upon information and belief, Travelers issued Business Automobile policy, No. TC2J-CAP-4252B443-13, to Monarch, as the first Named Insured, which was in effect on August 5, 2014 (the "Travelers Policy").

57. Upon information and belief, the Travelers Policy defines who is an insured, in sum or substance, as follows:

> **2. Who is An Insured**
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> (1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>
> (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>
> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>
> (4) Anyone other than your employees or partners (if you are a partnership), a member (if you are a limited liability company), a lessee or borrower or any of their "employee" while moving property to or from a covered "auto".
>
> (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

58. In the Underlying Action, the Estate alleges a claim for which the MTA and the TBTA qualify as insureds under the Travelers Policy.

59. In the Underlying Action, the MTA and the TBTA allege a claim for which Hellman qualifies as an insured under Travelers' policy.

60. By letter dated January 15, 2015, Wausau tendered the defense and indemnity of Hellman, the MTA, and the TBTA to Travelers for the Underlying Action.

61. To date, Travelers has not accepted the tender.

62. Travelers has failed and refused to provide the defense to Hellman, the MTA, and the TBTA for the claims alleged in the Underlying Action.

63. Travelers has, to date, wrongfully declined to provide coverage for Hellman, the MTA, and the TBTA for the Underlying Action.

64. By failing to timely disclaim coverage, Travelers waived and/or is estopped from raising any conditions or exclusions as a defense to coverage.

65. Based on their respective "Other Insurance" provisions, the coverage provided by the Wausau Policy to Hellman, the MTA, and the TBTA for the Underlying Action is excess to the coverage provided by Travelers' policy.

66. As a result of Travelers' breach of its duty to defend, Wausau has been forced to drop down and provide a defense to Hellman for the Underlying Action.

67. Wausau seeks a determination of its rights with regard to the Travelers Policy, including a declaratory judgment that Travelers is required to defend and indemnify Hellman, the MTA, and the TBTA for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy applies to Hellman, the MTA and the TBTA, for the Underlying Action.

68. Wausau has no adequate remedy at law.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
(Against EESISP)

69. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "68" of this Complaint as if more fully set forth herein.

70. In the Underlying Action, the Estate alleges a claim for which Hellman qualifies as an insured under EESISP's Policy.

71. By letter dated January 15, 2015, Wausau tendered the defense and indemnity of Hellman for the Underlying Action to EESISP.

72. By letter dated April 24, 2015, Wausau re-tendered the defense and indemnity of Hellman for the Underlying Action to EESISP.

73. To date, EESISP has not accepted the tender by Wausau.

74. EESISP has failed and refused to provide the defense to Hellman for the claims alleged in the Underlying Action.

75. EESISP has, to date, wrongfully declined to provide coverage for Hellman for the Underlying Action.

76. By failing to timely disclaim coverage, EESISP waived and/or is estopped from raising any conditions or exclusions as a defense to coverage.

77. Based on their respective "Other Insurance" provisions, the coverage provided by the Wausau Policy to Hellman for the Underlying Action is excess to the coverage provided by EESISP's policy.

78. As a result of EESISP's breach of its duty to defend, Wausau has been forced to drop down and provide a defense to Hellman for the Underlying Action.

79. Wausau seeks a determination of its rights with regard to EESISP's policy, including a declaratory judgment that EESISP is required to defend and indemnify Hellman for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy applies to Hellman, for the Underlying Action.

80. Wausau has no adequate remedy at law.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
(Money Judgment against Harleysville)

81. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "80" of this Complaint as if more fully set forth herein.

82. As a result of Harleysville's failure to acknowledge that it owes a duty to defend the MTA, the TBTA, and Hellman, Wausau has been required to pay for the defense of the MTA, the TBTA, and Hellman for the Underlying Action.

83. As a result of Harleysville's failure to acknowledge its primary duty to defend MTA, the TBTA, and Hellman, Wausau has incurred substantial attorneys' fees and other costs to defend the MTA, the TBTA, and Hellman for the Underlying Action.

84. Harleysville failed and refused to acknowledge its primary coverage obligation and to reimburse Wausau for costs incurred to defend the MTA, the TBTA, and Hellman in the Underlying Action.

85. As a result of the foregoing, Wausau is entitled to a money judgment against Harleysville in an amount equal to what it has incurred and will incur to defend MTA, the TBTA, and Hellman in the Underlying Action, in an amount to be determined by the Court.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
(Money Judgment against Travelers)

86. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "85" of this Complaint as if more fully set forth herein.

87. As a result of Travelers' failure to acknowledge that it owes a duty to defend the MTA, the TBTA, and Hellman, Wausau has been required to pay for the defense of the MTA, the TBTA and Hellman for the Underlying Action.

88. As a result of Travelers' failure to acknowledge its primary duty to defend the MTA, TBTA, and Hellman, Wausau has incurred substantial attorneys' fees and other costs to defend MTA, the TBTA, and Hellman for the Underlying Action.

89. Travelers failed and refused to acknowledge its primary coverage obligation and to reimburse Wausau for costs incurred to defend the MTA, the TBTA, and Hellman in the Underlying Action.

90. As a result of the foregoing, Wausau is entitled to a money judgment against Travelers in an amount equal to what it has incurred and will incur to defend the MTA, the TBTA, and Hellman in the Underlying Action, in an amount to be determined by the Court.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
(Money Judgment against EESISP)

91. Wausau repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "90" of this Complaint as if more fully set forth herein.

92. As a result of EESISP's failure to acknowledge that it owes a duty to defend Hellman, Wausau has been required to pay for the defense of Hellman for the Underlying Action.

93. As a result of EESISP's failure to acknowledge its primary duty to defend Hellman, Wausau has incurred substantial attorneys' fees and other costs to defend Hellman for the Underlying Action.

94. EESISP failed and refused to acknowledge its primary coverage obligation and to reimburse Wausau for costs incurred to defend Hellman in the Underlying Action.

95. As a result of the foregoing, Wausau is entitled to a money judgment against EESISP in an amount equal to what it has incurred and will incur to defend Hellman in the Underlying Action, in an amount to be determined by the Court.

**WHEREFORE**, plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU demands judgment as follows:

1. On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and defendant HARLEYSVILLE PREFERRED INSURANCE COMPANY with

respect to their liability insurance coverage obligations for the MTA, the TBTA, and Hellman for the Underlying Action, including a declaratory judgment that Harleysville is required to defend and indemnify the MTA, the TBTA, and Hellman under the Harleysville Policy for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy, if any, applies to MTA, the TBTA, and Hellman, for the Underlying Action;

2. On the second claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and defendant The TRAVELERS INDEMNITY COMPANY with respect to their liability insurance coverage obligations for Hellman, the MTA, and the TBTA for the Underlying Action, including a declaratory judgment that Travelers is required to defend and indemnify Hellman, the MTA, and the TBTA under the Travelers Policy for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy, if any, applies to Hellman, the MTA, and the TBTA, for the Underlying Action;

3. On the third claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and defendant THE ELECTRICAL EMPLOYERS SELF INSURANCE SAFETY PLAN with respect to their liability insurance coverage obligations for Hellman for the Underlying Action, including a declaratory judgment that EESISP is required to defend and indemnify Hellman under EESISP's policy for the Underlying Action, and a declaratory

judgment that such coverage would apply on a primary basis before coverage under the Wausau Policy, if any, applies to Hellman for the Underlying Action;

4. On the fourth claim for relief, a money judgment in favor of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and against defendant HARLEYSVILLE PREFERRED INSURANCE COMPANY, in an amount to be determined by the Court;

5. On the fifth claim for relief, a money judgment in favor of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and against defendant THE TRAVELERS INDEMNITY COMPANY, in an amount to be determined by the Court;

6. On the sixth claim for relief, a money judgment in favor of plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU and against defendant THE ELECTRICAL EMPLOYERS SELF INSURANCE SAFETY PLAN, in an amount to be determined by the Court; and

7. Granting plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU recovery of the costs and disbursements of this action, together with such

other and further relief as this Court deems just and proper.

Dated: New York, New York
May 15, 2015

Yours, etc.,

JAFFE & ASHER LLP

By: ______________________________

Marshall T. Potashner (MTP-3552)
Janet J. Lee (JL-8023)
Attorneys for Plaintiff
EMPLOYERS INSURANCE COMPANY
OF WAUSAU
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000
mpotashner@jaffeandasher.com
jjlee@jaffeandasher.com