UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
EMPLOYERS INSURANCE COMPANY OF WAUSAU, :          15cv4175 (DLC)
                                       :
                  Plaintiff,           :          OPINION AND ORDER
                                       :
        -v-                            :
                                       :
HARLEYSVILLE PREFERRED INSURANCE       :
COMPANY, THE TRAVELERS INDEMNITY       :
COMPANY, and THE ELECTRICAL EMPLOYERS  :
SELF INSURANCE SAFETY PLAN,            :
                                       :
                  Defendants.          :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Janet Jakyung Lee
Marshall Todd Potashner
Jaffe & Asher LLP
600 Third Avenue, 9th Floor
New York, NY 10016

For defendant Harleysville Preferred Insurance Company:
Brooks Howard Leonard
Lance Jon Kalik
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962

For defendants The Travelers Indemnity Company and Travelers
Property Casualty Company of America:
Alan C. Eagle
Joanne Mary Engeldrum
Rivkin Radler, LLP
926 Rexcorp Plaza
Uniondale, NY 11556

DENISE COTE, District Judge:

        This case arises from the tragic death of Nicholas Cavataio

("Cavataio") on August 5, 2014.  Cavataio was working at a construction site when a large battery fell on him as it was being unloaded from a truck.  Cavataio's estate filed a lawsuit in New York state court (the "Underlying Action").  This case concerns three insurance companies, Employers Insurance Company of Wausau ("Wausau"), Travelers Indemnity Company ("Travelers"), and Harleysville Preferred Insurance Company ("Harleysville"), who dispute who among them must defend and indemnify various defendants in that state court action.  The motions currently before the Court concern the insurers' duty to defend.  For the reasons that follow, neither Travelers nor Harleysville has a duty to defend the Underlying Action.

## Background

The following facts are undisputed, unless otherwise noted.

## I.    The Incident of August 5, 2014

On August 5, 2014, Cavataio was working for Hellman Electric Corporation ("Hellman") on a construction project, known as TN Task 26, to install am integrated security system at the Throgs Neck Bridge in Bronx, New York.  The project was pursuant to a contract between Hellman and the Triborough Bridge and Tunnel Authority ("TBTA"), an affiliate agency of the Metropolitan Transportation Authority ("MTA").

On that day, Hellman received a delivery of two large

batteries, one weighing 760 pounds, and the other weighing 2760 pounds, from Monarch Electric Company ("Monarch").  The batteries were manufactured by the Eaton Corporation ("Eaton").  The delivery was made in a truck (the "Truck") rented from Miller Auto Leasing Corporation ("Miller").  The Truck was registered and principally garaged in New Jersey.  When the batteries were delivered, Monarch employee Timothy Delaney ("Delaney") and Hellman employee Carl Wrynn ("Wrynn") unloaded the batteries from the Truck.  Wrynn and Delaney used a hydraulic pallet jack to move the batteries.  According to Delaney, a pallet jack is "a mobile device with wheels and has a lever on top and two large, horizontal prongs extending from the bottom."  The prongs may be placed into large wooden pallets in order to hydraulically lift the pallet and its contents.

As Wrynn and Delaney unloaded the second of the large batteries, the battery fell off the truck and struck Cavataio in the head, killing him.  Immediately prior to the battery falling, Delaney had moved the pallet jack and battery onto the lift gate of the Truck, and had lowered the battery to be flush with the floor of the truck and lift gate, but had not moved the lift gate.  Hellman prepared a report on the incident, which stated:

Nick Cavataio was in the parking lot area assisting

3

Carl Wrynn (Hellman Employee) and truck driver from
Monarch Electrical Supply (Tim [Delaney]).  They
unloaded crate #1 at 765 pounds with no problem.
While unloading crate #2 at 2,735 pounds Tim from
Monarch turned the pallet jack around on the 3,000
pound lift gate.  All of a sudden the crate tipped
over so fast that Carl Wrynn and Tim [Delaney] jumped
down from the truck and noticed Nick Cavataio
underneath by the side of the 2,735 pound crate.  Nick
[Cavataio] was bleeding excessively and died on
impact.  Carl Wrynn called General Foreman, Joseph
Sergi who immediately called 911 (ambulance); Nick
Cavataio was pronounced deceased on site.

Officers of the New York City Police Department interviewed

Wrynn and Delaney and prepared a police report which stated:

On August 5, 2014, at approximately 0745 hours witness
[redacted] M/W/43 and witness [redacted] M/W/46 were
making a delivery of a battery cabinet weighing 2760
pounds at 4260 Throgsneck Expressway at the TBTA
facility.  Witness #1 was inside the delivery truck
using a pump jack to move the skid containing the
battery cabinet towards the truck lift with the
assistance of witness #2.  As witness #1 and #2 moved
the pallet to the truck lift the skid began to slide
forward off the pump jack.  Witnesses were unable to
hold the battery cabinet due to the amount of the
weight.  Battery Cabinet fell off the lift and struck
the victim Nicolas Cavataio on the head causing his
demise.  Victim was pronounced [dead] at 0800 h[ou]rs
by EMS.

## II.  The Underlying Action

On November 17, 2014, Cavataio's widow, Rosanne Cavataio

("Ms. Cavataio"), on behalf of both Cavataio's estate and

herself, filed a lawsuit against the MTA, Eaton, Miller,

Monarch, and the TBTA, in the New York Supreme Court, Bronx

County.[1]  The complaint alleges that the defendants negligently and/or recklessly caused Cavataio's death, and includes claims for (1) conscious pain and suffering, (2) wrongful death, (3) violation of New York Labor Law § 240, (4) violation of New York Labor Law § 241, (5) violation of Rule 23 of the Industrial Code of the State of New York, (6) violation of New York Labor Law § 200, and (7) loss of consortium.  In her bill of particulars, Ms. Cavataio identifies several alternative theories of liability: (1) defendants' failure to use the proper pallet jack to move the battery, (2) defendants' failure to properly unload the battery from the Truck, (3) defendants' failure to use a loading dock to unload the battery, and (4) defendants' failure to park the Truck in a safe location during unloading of the batteries.  On January 15, 2015, the MTA and TBTA filed a third-party complaint against Hellman for indemnification and/or contribution in connection with any damages awarded to Ms. Cavataio in the Underlying Action, and for breach of contract because Hellman failed to obtain insurance as required by its contract with the MTA and TBTA.

    Wausau is currently defending Hellman, the MTA, and the

---

[1] Ms. Cavataio could not assert claims directly against Hellman because of N.Y. Workers' Comp. Law § 11, which provides that workers' compensation is the exclusive remedy to an employee, his spouse, or other personal representatives for injuries to an employee.

TBTA in the Underlying Action, subject to a reservation of rights.  Wausau contends that Travelers and Harleysville also have a duty to defend Hellman, the MTA, and the TBTA in the Underling Action.

## III. The Insurance Policies

There are three insurance policies at issue in this case. Wausau issued a general commercial liability policy to Hellman (the "Wausau Policy"), and is currently defending Hellman, the MTA, and the TBTA in the Underlying Action.  Harleysville issued a business auto policy to Hellman (the "Harleysville Policy"). Travelers issued a commercial auto policy to Monarch (the "Travelers Policy").  Travelers and Harleysville have disclaimed coverage for the claims in the Underlying Action.

### A. The Wausau Policy

The Wausau Policy provided coverage for one year beginning on June 27, 2014, which encompassed the August 2014 accident date.  The limit on coverage under the Wausau Policy is $2,000,000 per occurrence and $4,000,000 in aggregate.

### B. The Travelers Policy

Travelers issued the Travelers Policy to Consolidated Electrical Distributors, Inc. ("CED").  CED has subsidiaries in numerous states, one of which is Monarch.  By endorsement dated November 11, 2013, Monarch was added as an additional named

insured under the Travelers Policy.

The Travelers Policy contains the following provisions defining who is considered an "insured":

1. Who Is An Insured

The following are "insureds":

a. You[2] for any covered "auto"[3].

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

* * *

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

* * *

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

With respect to autos "principally garaged in New Jersey," these provisions are modified by an endorsement titled "New Jersey Changes," which provides:

A. Changes In Who Is An Insured

Paragraph 1.b.(4) of Who Is An Insured in the Business Auto, Motor Carrier and Truckers Coverage forms is replaced by the following:

---

[2] "You" is defined by the Travelers Policy as "the Named Insured," which includes Monarch.

[3] A "covered auto" is defined by the Travelers Policy as "any auto."

7

(4) Anyone other than your "employees", partners (if
you are a partnership), members (if you are a limited
liability company), or a lessee or borrower or any of
their "employees", while moving property to or from a
covered "auto".

However, this paragraph does not apply for coverage up
to the minimum financial responsibility limits
specified in N.J.S.A. 39:6B-1.

The Travelers Policy states that Travelers will pay all
sums an insured "must pay as damages because of 'bodily injury'
or 'property damage' . . . caused by an 'accident' and resulting
from the ownership, maintenance or use of a covered 'auto.'"
The coverage limit under the Travelers Policy is $3,000,000 per
accident.  The Travelers Policy further provides that Travelers
has the "duty to defend any 'insured' against a 'suit' asking
for such damages," but that Travelers has no duty to defend
suits related to injuries for which the Travelers Policy does
not provide coverage.

The Travelers Policy contains two exclusions which
Travelers contends are relevant to the Underlying Action.  The
first is the Employee Indemnification and Employer's Liability
exclusion (the "Travelers Policy Employer's Liability
Exclusion"), which provides:

This insurance does not apply to any of the following:

                    *  *  *
"Bodily injury" to

a. An "employee" of the "insured" arising out of and
in the course of:

(1) Employment by the "insured"; or
(2) Performing the duties related to the "insured's"
business;

b. The spouse, child, parent, brother or sister of
that "employee" as a consequence of Paragraph a.
above.

This exclusion applies:
(1) Whether the "insured" may be liable as an employer
or in any other capacity; and
(2) To any obligation to share damages with or repay
someone else who must pay damages because of the
injury.

The second exclusion is titled Movement of Property by

Mechanical Device (the "Travelers Policy Mechanical Device

Exclusion"), and provides:

This insurance does not apply to any of the following:

* * *

"Bodily injury" or "property damage" resulting from
the movement of property by a mechanical device (other
than a hand truck) unless the device is attached to
the covered "auto".

## C. The Harleysville Policy

Harleysville issued the Harleysville Policy to Hellman.

The Harleysville Policy had a coverage period from June 27, 2014

until June 27, 2015.  The Harleysville Policy has a policy limit

of $1,000,000.

The Harleysville Policy states that Harleysville "will pay

all sums an 'insured' must pay as damages because of 'bodily
injury' or 'property damage' to which this policy applies,
caused by an 'accident' and resulting from the ownership,
maintenance or use of a covered 'auto.'"[4]  It also states that
Harleysville has a "duty to defend any 'insured' against a
'suit' asking for such damages," but not for any damages "to
which this insurance does not apply."  The Harleysville Policy
defines who is an insured as:

> You for any covered "auto".

> ***

> c. Anyone liable for the conduct of an "insured"
> described above but only to the extent of that
> liability.

The Harleysville Policy contains two exclusions which
Harleysville contends are relevant to the Underlying Action.
The first is the Employee Indemnification and Employer's
Liability exclusion (the "Harleysville Policy Employer Liability
Exclusion"), which provides:

> This insurance does not apply to any of the following:

> * * *

> 'Bodily injury' to:

> a. An "employee" of the "insured" arising out of and
> in the course of:

> (1) Employment by the "insured"; or

---

[4] A covered "auto" is defined as "any auto."

(2) Performing the duties related to the conduct of
the "insured's" business[.]

The second exclusion is the Movement of Property by
Mechanical Device exclusion ("Harleysville Policy Mechanical
Device Exclusion"), which provides:

This insurance does not apply to any of the following:

* * *

"Bodily injury" or "property damage" resulting from
the movement of property by a mechanical device (other
than a hand truck) unless the device is attached to
the covered "auto".

## IV.  Procedural Background

Wausau requested that both Travelers and Harleysville
provide coverage to Hellman, the MTA, and the TBA for the
Underlying Action.  Both Travelers and Harleysville have
disclaimed coverage.  On June 1, 2015, Wausau filed the instant
diversity action, seeking a declaratory judgment that Travelers
and Harleysville are required to defend and indemnify Hellman,
the MTA, and the TBTA in the Underlying Action.  Wausau also
seeks a money judgment against Travelers and Harleysville in an
amount equal to what it has spent and will spend defending
Hellman, the MTA, and the TBTA in the Underling Action.

Harleysville filed its answer on July 13, and asserted a
counterclaim against Wausau seeking a declaration that
Harleysville had no duty to defend Hellman, the MTA, or the TBTA

11

in the Underlying Action, or in the alternative, that the
coverage under the Harleysville Policy is in excess to that
provided by the Wausau Policy, and that Harleysville is entitled
to contribution and/or indemnification from Wausau.
Harleysville also asserted a cross-claim against Travelers
seeking a declaration that the Harleysville Policy is in excess
to the Travelers Policy and that Harleysville is entitled to
contribution and/or indemnification from Travelers.

Travelers filed its answer on July 17, and also sought a
declaration that it has no duty to defend or indemnify Hellman,
the MTA, or the TBTA in the Underling Action.  In the
alternative, if coverage is found under the Travelers Policy,
Travelers seeks a determination of the relative share of the
parties' coverage.

On October 16, Wausau filed a motion for summary judgment
on its duty to defend claims.  On November 11, Travelers and
Harleysville both filed cross motions for summary judgment.  The
three motions were fully submitted on December 4.

## Discussion

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary

judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech. Servs.,Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[C]onclusory statements, conjecture, and

inadmissible evidence are insufficient to defeat summary
judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317
(2d Cir. 2011) (citation omitted), as is "mere speculation or
conjecture as to the true nature of the facts." Hicks v. Baines,
593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only
disputes over material facts -- "facts that might affect the
outcome of the suit under the governing law" -- will properly
preclude the entry of summary judgment.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).

Under New York law, an insurer has a duty to defend a suit
"whenever the allegations of the complaint suggest a reasonable
possibility of coverage." Euchner-USA, Inc. v. Hartford Cas.
Ins. Co., 754 F.3d 136, 141 (2d Cir. 2014) (citation omitted).
The duty to defend is broader than the duty to indemnify, and
thus an insurer may be required to defend a suit and yet have no
duty to indemnify once the litigation has run its course.  Id.
at 140.  "If, liberally construed, the claim is within the
embrace of the policy, the insurer must come forward to defend
its insured no matter how groundless, false or baseless the suit
may be," and "[a]ny doubt as to whether the allegations state a
claim within the coverage of the policy must be resolved in
favor of the insured and against the carrier." Id. at 141
(citation omitted).

Similarly, under Texas law, "courts strictly apply the 'eight-corners rule,' which looks only to the four corners of the most recent complaint in the underlying action as well as the four corners of the insurance policy." City of Coll. Station, Tex. v. Star Ins. Co., 735 F.3d 332, 336 (5th Cir. 2013).  If the underlying complaint pleads facts sufficient to create the potential of covered liability, the insurer has a duty to defend the entire case, but "if the insurer can show that all of the alleged liability falls outside of the scope of coverage or within the scope of an exclusion, the insurer has no duty to defend."  Id. at 336-37.  In assessing the duty to defend, the Court must construe the complaint liberally, construe exclusions narrowly, and resolve any ambiguity in favor of the insured.  Id. at 337.

I.   **Coverage Under the Travelers Policy**

   **A. Choice of Law**

Wausau and Travelers dispute which law governs the Travelers Policy.  Wausau argues that New Jersey law applies because Monarch has its principal place of business in New Jersey and because the Truck was garaged in New Jersey.  Travelers argues that Texas law applies because the Travelers Policy was originally issued to Monarch's parent, CED, and CED has its principal place of business in Texas.  There is a

conflict between New Jersey and Texas law because New Jersey law would invalidate certain exclusions in the Travelers Policy that are enforceable under Texas law.

"Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New York recognizes the "center of gravity" or "grouping of contacts" approach to choice of law in contract disputes, which applies the law of the state with the closest relationship to the transaction and the parties. In re Liquidation of Midland Ins. Co., 16 N.Y.3d 536, 543 (2011). "In the context of liability insurance contracts, the jurisdiction with the most 'significant relationship to the transaction and the parties' will generally be the jurisdiction 'which the parties understood was to be the principal location of the insured risk.'" Id. at 544 (citation omitted). When an insurance policy covers risks spread across multiple states, however, the principal place of business of the insured serves as a proxy for the principal location of the insured risk. Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 35 (1st Dep't 2006). Here, the insured that negotiated and purchased the Travelers Policy was CED, which has

its principal place of business in Texas, and thus Texas law applies to the Travelers Policy.

Wausau's arguments to the contrary are without merit. First, Wausau argues that Monarch, not CED, is the relevant insured, and was added to the Travelers Policy as a separate insured by endorsement dated November 1, 2013. This argument fails. Foster Wheeler focused on the intent of the parties who entered into the insurance contract. Here it is CED and Travelers who purchased and entered into the Travelers Policy, and Monarch was only added by endorsement as an additional insured. In addition, the court in Foster Wheeler reasoned that the choice of law analysis should promote "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied." Id. at 34 (citation omitted). Wausau's reasoning would result in the application of dozens of states' law to a single policy, a result disfavored by New York law. See Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 154 (2d Cir. 2003) (noting "[t]he dearth of New York cases applying the laws of more than one state to an insurance policy").

Second, Wausau argues that the factors used to determine the principal place of the risk weigh in favor of application of New Jersey law: (1) Monarch's domicile is New Jersey, (2) the

Truck was principally garaged in New Jersey, and (3) the Travelers Policy itself contains an endorsement specific to New Jersey.  These factors, however, are not controlling when the risk covered by an insurance contract spans multiple states.  Foster Wheeler, 822 N.Y.S.2d at 33.  Moreover, the inclusion of numerous state-specific endorsements to the Travelers Policy suggests the contracting parties intended that a single state's law would apply, and that only certain provisions would vary by state accordingly to the respective endorsements.

Third, Wausau argues that Foster Wheeler does not apply because Monarch was added as an insured under the Travelers Policy to insure against a specific risk, relying on Ill. Nat. Ins. Co. v. Zurich Am. Ins. Co., 969 N.Y.S.2d 11, 12 (2013).  That case is distinguishable because there the additional named insured was added to insure a specific construction project to be performed by a subcontractor.  Id.  Here, Monarch was added along with numerous other subsidiaries of CED and coverage was not limited to a specific project.

**B. Who Is an Insured Under the Travelers Policy?**

Hellman is an insured under the Travelers Policy.  This determination requires examination of both the Travelers Policy and its New Jersey Endorsement.

The Travelers Policy provides that, in addition to Monarch,

18

an "insured" includes anyone who uses a covered auto with
Monarch's permission except "[a]nyone other than [Monarch's]
'employees' . . . or a lessee or borrower or any of their
'employees', while moving property to or from a covered 'auto.'"
It is undisputed that Hellman is not an employee of Monarch and
that Cavataio's injuries occurred while a battery was being
moved out of the Truck.[5]  Consequently, Hellman would not qualify
as an insured under the language of the Travelers Policy.

But, this conclusion is altered by an endorsement titled
"New Jersey Changes."  The endorsement modifies the Travelers
Policy's definition of "Who Is An Insured" such that it does not
apply "for coverage up to the minimum financial responsibility
limits specified in N.J.S.A. 39:6B-1" (the "Omnibus Statute").
The Omnibus Statute provides:

> Every owner or registered owner of a motor vehicle
> registered or principally garaged in this State shall
> maintain motor vehicle liability insurance coverage
> . . . insuring against loss resulting from liability
> imposed by law for bodily injury, death and property
> damage sustained by any person arising out of the
> ownership, maintenance, operation or use of a motor
> vehicle wherein such coverage shall be at least in:
> (1) an amount or limit of $15,000.00, exclusive of

---

[5] Wausau argues that the injury did not occur while property was
being moved "from" an auto since the battery was being moved
"from the cargo hold of the truck to the lift gate of the
truck," and that movement of the battery was "wholly within and
on the Truck."  This argument does not create a genuine dispute
since it is undisputed that the battery was moved from the truck
bed to remove it from the Truck altogether.

> interest and costs, on account of injury to, or death
> of, one person, in any one accident.

N.J. Stat. Ann. § 39:6B-1.  The Supreme Court of New Jersey has
held that "that the obligation to provide coverage in a loading
and unloading accident arises from statute and therefore cannot
be limited by contract."  Potenzone v. Annin Flag Co., 191 N.J.
147, 152-53 (2007).  Accordingly, if the Omnibus Statute
applies, the endorsement modifies the definition of insured but
only up to the minimum coverage required by the statute.

The Omnibus Statute applies to the claims in the Underlying
Action.  The statute "requires that owners of motor vehicles
registered or principally garaged in New Jersey maintain
liability insurance for certain mandatory minimum amounts."
Citizens United Reciprocal Exch. v. Perez, 223 N.J. 143, 152-53
(2015).  Here, the owner of the Truck is Miller, not Monarch.
Monarch, however, assumed the contractual responsibility to
obtain insurance coverage for operation of the Truck.  The
leasing agreement between Monarch and Miller provides:

> CUSTOMER SHALL AT HIS EXPENSE: (1) OBTAIN A POLICY OF
> BODILY INJURY AND PROPERTY DAMAGE LIABILITY & PHYSICAL
> DAMAGE INSURANCE WHICH SHALL EXTEND COVERAGE TO MILLER
> AND MILLER'S ASSIGNEE AS AN ADDITIONAL INSURED AND
> LOSS PAYEE ENTITLED TO ALL THE TERMS AND BENEFITS OF
> THE POLICY. . . .

The agreement further states that the insurance obtained by
Monarch to satisfy this requirement is the Travelers Policy.

20

Monarch's insurer, Travelers, was therefore required to provide the minimum coverage required by New Jersey Law.  See Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co., 90 F. Supp. 3d 304, 315 (D.N.J. 2014) (holding that the statutory minimum applies when the party seeking coverage is not the owner of the vehicle but assumed the contractual responsibility to provide insurance).[6]

Having concluded that Omnibus Statute applies, the last issue is whether the claims against Hellman involve an injury "arising out of the ownership, maintenance, operation or use of a motor vehicle."  N.J. Stat. Ann. § 39:6B-1.  There is no genuine dispute that Cavataio was killed by a falling battery while Hellman and Monarch employees were in the process of unloading the battery from the Truck.  Under New Jersey law, loading and unloading a vehicle is considered "use" of a motor vehicle.  Pisaneschi v. Turner Const. Co., 345 N.J. Super. 336, 343 (App. Div. 2001).  Accordingly, Hellman is an insured under the Travelers Policy but only up to the minimum coverage

---

[6] In Carolina, a company called Ho-Ro was a named insured under a policy issued by Carolina Casualty Insurance Company ("CCIC"). Ho-Ro leased a vehicle and used it to load materials at a construction site for a contractor called Gardner Bishop.  A Ho-Ro employee was injured when an object fell from the truck and crushed his foot.  Travelers prevailed in arguing that the Omnibus Statute required coverage under the CCIC policy for Gardiner Bishop, even though it neither owned nor had leased the truck.

required by the Omnibus Statute.

Wausau next contends that the MTA and TBTA are insureds under the Travelers Policy because an insured includes "[a]nyone liable for the conduct of an 'insured' . . . but only to the extent of that liability."  The MTA and TBTA are being sued in the Underlying Action under a theory of vicarious liability for the negligence of the other defendants, who are insured under the Travelers Policy.  Travelers does not dispute that the MTA and TBTA qualify as insureds under the Travelers Policy.

### C. Mechanical Device Exclusion

The Travelers Policy Mechanical Device Exclusion provides that coverage does not extend to bodily injury "resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto.'"  Under Texas law, the term "resulting from" in the insurance context requires only that a result arose out of or flowed from a cause, and does not require a showing of proximate causation.  Lancer Ins. Co. v. Garcia Holiday Tours, 345 S.W.3d 50, 55 (Tex. 2011) (holding that "result from" and "arise out of" have the same meaning); Utica Nat. Ins. Co. of Texas v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) (holding that term "arise out of" equates to but-for rather than proximate causation).

It is undisputed that Cavataio was injured while a battery was being moved by a pallet jack, a hydraulically-powered mechanical device.[7]  It is also undisputed that the pallet jack was not attached to the Truck.  Cavataio's injuries therefore resulted from the movement of property by a mechanical device, and fall under the unambiguous language of the Travelers Policy Mechanical Device Exclusion.

Wausau raises two arguments for why the exclusion does not apply.  Neither has merit.  First, Wausau argues that the exclusion does not apply because some of the claims in the Underlying Action do not allege that the injury was a result of the movement of the battery.  This argument is unavailing because all of the claims in the Underlying Action allege that Cavataio was killed by the battery while it was being moved from the Truck, and it is undisputed that the battery was being moved

---

[7] The parties dispute whether a pallet jack is a type of "hand truck," the use of which is an exception to the Travelers Policy Mechanical Device Exclusion.  There is no genuine dispute, however, that a hydraulically-powered device capable of moving a battery weighing over a ton is not a hand truck.  A hand truck is defined as "a two-wheeled cart for moving heavy objects consisting of a vertical framework at the top and a metal blade at the bottom that is inserted beneath a load, the entire assembly being tilted backwards until balanced for easy pushing or pulling."  The American Heritage Dictionary of the English Language (4th ed. 2000).  A pallet jack is not a hand truck under any reasonable interpretation of that term, and thus, there is no genuine dispute that the battery was being moved by a mechanical device.

by a pallet jack at that time.  While the theory of recovery differs among the claims, the alleged injury is that Cavataio was killed by the falling battery, which was being moved by the pallet jack.

Second, in a letter dated February 17, 2016, Wausau contends that Cavataio's injuries were caused by "a failure of the lift gate to maintain level and hold the weight of the battery unit and pallet," rather than due to failure of the pallet jack.  In support of this argument, Wausau relies on the deposition testimony of Delaney, who testified that, immediately prior to the battery falling, he had moved the battery, pallet, and pallet jack onto the lift gate, and lowered the battery to be flush with the lift gate and truck.  At that moment, the battery was sitting on a pallet, the pallet was sitting on the pallet jack, and the pallet jack was sitting on the lift gate, which was attached to the end of the Truck.  Importantly, Delaney's unrefuted testimony is that the lift gate was not moving when the battery fell.  Accordingly, from the time Delaney and Wrynn began moving the battery until the time it fell on Cavataio, the only device used to move the battery was the pallet jack; the lift gate remained stationary.  Delaney further testified that at the time the battery fell on Cavataio, the lift gate remained flush with the bed of the truck.  For

these reasons, there is no genuine dispute that the battery fell while being moved by a mechanical device.

Accordingly, the Travelers Policy Mechanical Device exclusion applies to all the claims in the Underlying Action. Because all of the alleged liability falls within the scope of this exclusion, Travelers has no duty to defend the Underlying Action.

### D. Employer's Liability Exclusion

The Travelers Employer's Liability Exclusion provides that coverage does not extend to bodily injuries to "[a]n 'employee' of the 'insured' arising out of and in the course of (1) [e]mployment by the 'insured'; or (2) [p]erforming the duties related to the 'insured's' business."  The parties do not dispute that this exclusion is inapplicable to the MTA and TBTA, but dispute whether it applies to Hellman.  Having already determined that all the claims in the Underlying Action fall within the scope of the Travelers Policy Mechanical Device Exclusion and that Travelers has no duty to defend the Underlying Action, this issue is moot.

## II.  Coverage Under the Harleysville Policy[8]

### A. Who Is an Insured Under the Harleysville Policy?

Hellman is a named insured under the Harleysville Policy. The MTA and TBTA are additional insureds because the Harleysville Policy provides that an insured includes "[a]nyone liable for the conduct of an "insured . . . but only to the extent of that liability."  The claims against the MTA and TBTA include claims that those parties are vicariously liable for the death of Cavataio.  Specifically, the complaint in the Underlying Action includes claims under N.Y. Labor Law §§ 240 and 241, which impose vicarious liability on the owners of premises for the negligence of others.  See Robinson v. City of New York, 779 N.Y.S.2d 757, 760 (Sup. Ct. 2004) (noting that violations of § 240 impose vicarious liability on owners); Torres v. City of New York, 7 N.Y.S.3d 539, 542 (2d Dep't 2015) (noting that § 241 "imposes a nondelegable duty on owners, contractors, and their agents to provide a safe workplace to workers.").  Because the MTA and TBTA's liability under these statutes could be predicated on Hellman's conduct, the MTA and TBTA qualify as insureds to the extent of Hellman's liability.

Harleysville argument to the contrary is unpersuasive.

---

[8] The parties agree that the Harleysville Policy is governed by New York law.

Harleysville argues that Ms. Cavataio did not bring any claims against Hellman in the Underlying Action and that the complaint in the Underlying Action alleges that Cavataio's death was caused solely by the named defendants.  For those reasons, Harleysville contends that the MTA and TBTA are not alleged to be liable for the conduct of Hellman.  This argument fails because (1) Ms. Cavataio could not bring claims directly against Hellman because of N.Y. Workers' Comp. Law § 11, which provides that workers' compensation is "exclusive and in place of any other liability whatsoever," and (2) the complaint in the Underlying Action does allege that Cavataio's death occurred at Hellman's worksite, and it is undisputed that a Hellman employee, Wrynn, was involved in unloading the battery that killed Cavataio.  There is a reasonable possibility that the MTA and TBTA will be held liable for the conduct of Hellman, and that is all that is required at this juncture.  GMM Realty, LLC v. St. Paul Fire & Marine Ins. Co., 11 N.Y.S.3d 661, 662 (2d Dep't 2015) ("[A]n insurer's duty to defend . . . arises whenever the allegations in the complaint in the underlying action, construed liberally, suggest a reasonable possibility of coverage.").

## B. Mechanical Device Exclusion

The Harleysville Policy contains an exclusion for bodily

injury "resulting from the movement of property by a mechanical device."  The language of this exclusion is identical to the one in the Travelers Policy.  As already discussed in connection with the Travelers Policy Mechanical Device Exclusion, Cavataio was killed while a battery was being moved by a pallet jack, and that pallet jack was not attached to the Truck.  Because all the claims in the Underlying Action are predicated on Cavataio's death, all claims fall under the plain language of the Harleysville Policy Mechanical Device Exclusion.

Wausau makes three arguments as to why the Harleysville Policy Mechanical Device Exclusion does not apply.  None of them has merit.  First, it argues that the complaint in the Underlying Action does not mention a pallet jack, and that Harleysville may not rely on extrinsic evidence to defeat coverage.  This argument fails because (1) Ms. Cavataio alleges in her bill of particulars in the Underlying Action that the battery was being moved by a pallet jack, and (2) it is undisputed that the battery that crushed Cavataio was being moved by means of a pallet jack when it fell.

Second, Wausau argues that the exclusion does not apply because the pallet jack is a type of hand truck, the use of which is an exception to the Harleysville Policy Mechanical Device Exclusion.  As discussed above in connection with the

28

Travelers Policy Mechanical Device Exclusion, a pallet jack is not a hand truck under any reasonable interpretation of the term. The case relied upon by Wausau does not alter that conclusion. See Manigault v. W.H. Beaumont & Son, 237 N.Y.S. 370 (3d Dep't 1929) (concerning a dolly, not a pallet jack). Accordingly, there is no genuine dispute that the battery fell while being moved by a mechanical device.

Third, Wausau argues that the exclusion does not apply because Ms. Cavataio has raised several different theories of liability in the Underlying Action, some of which are unrelated to the pallet jack. This argument is unavailing for the reasons discussed in connection with the Travelers Policy. Although Ms. Cavataio has alleged different theories of liability in the Underlying Action, the claims all arise from the allegation that Cavataio was killed while the battery was being moved by a pallet jack. See U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co., 706 N.Y.S.2d 377, 380 (2000) (holding that the possibility of alternative theories of recovery did not alter the operative act giving rise to the accident itself). Accordingly, the Harleysville Policy Mechanical Device Exclusion applies to exclude coverage for Hellman, the MTA, and the TBTA under the Harleysville Policy.

**C. Employer's Liability Exclusion**

The Harleysville Policy contains an exclusion for bodily injury to "[a]n 'employee' of the 'insured' arising out of and in the course of . . . [e]mployment by the 'insured.'"  Wausau and Harleysville dispute whether coverage is excluded under this provision.  Having determined that coverage is excluded under the Harleysville Policy Mechanical Device Exclusion, this issue is moot.

**III. Priority of Coverage Among the Policies**

Wausau seeks a declaration that the Travelers Policy and Harleysville Policy are primary with respect to the claims in the Underlying Action, and that the Wausau Policy is excess. Having determined that neither Travelers nor Harleysville has a duty to defend the Underlying Action, this issue is moot. Similarly, Travelers' and Harleysville's requests for a determination of the relative share of the parties' coverage are moot.

<u>Conclusion</u>

Wausau's motion for summary judgment is denied.  Neither Travelers nor Harleysville has a duty to defend the Underlying Action.  Wausau's claim for a declaration concerning the priority of coverage among the parties is dismissed as moot.

Travelers' motion for summary judgment is granted insofar

as there is no coverage under the Travelers Policy for the claims in the Underlying Action, and thus Travelers has no duty to defend the Underlying Action.  For that reason, Harleysville's cross-claim against Travelers is dismissed.

Harleysville's motion for summary judgment is granted insofar as there is no coverage under the Harleysville Policy for the claims in the Underlying Action, and thus Harleysville has no duty to defend Hellman, the MTA, or the TBTA. Harleysville's counterclaim against Wausau seeking a declaration that Wausau has a duty to defend the Underlying Action is dismissed as moot.

Dated:    New York, New York
          February 29, 2016

_____
DENISE COTE
United States District Judge

31