# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | CASE NO.: 15-CV-4175-DLC |
| Plaintiff, | **ELECTRONICALLY FILED** |
| vs. | |
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, and THE TRAVELERS INDEMNITY COMPANY, | *Oral Argument Requested* |
| Defendants. | |

---

## DEFENDANT HARLEYSVILLE PREFERRED INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

RIKER DANZIG SCHERER HYLAND &
    PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendant Harleysville Preferred
Insurance Company

Of Counsel and On the Brief:
    Lance J. Kalik (LK-4677)

On the Brief:
    Brooks H. Leonard (BL-4758)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

I.     THE UNDERLYING ACCIDENT ................................................................3

II.    THE UNDERLYING ACTION..................................................................4

       A.    Procedural Posture .....................................................................4

       B.    Discovery in the Underlying Action ........................................5

       C.    The Summary Judgment Motions............................................6

III.   THE POLICIES ..................................................................................7

IV.   THE DECLARATORY JUDGMENT ACTION ..........................................7

LEGAL ARGUMENT..........................................................................................................9

I.     THE MECHANICAL DEVICE EXCLUSION PRECLUDES COVERAGE UNDER
      THE HARLEYSVILLE POLICY FOR HELLMAN, THE TBTA, AND THE MTA.9

       A.    The Accident Resulted from the Movement of Property by the Pallet
           Jack......................................................................................9

       B.    The Language of the Mechanical Device Exclusion Demonstrates that
           Proximate Cause is Not Required ........................................13

       C.    The Harleysville and Wausau Policies are Mutually Exclusive......................14

       D.    Harleysville has no Duty to Indemnify Notwithstanding the Theories
           of Liability in the Underlying Action ..................................16

       E.    Even if Proximate Cause Is Required, Harleysville Is Entitled to
           Summary Judgment............................................................17

II.    THIS COURT SHOULD RESOLVE THE COVERAGE ISSUE AND NOT WAIT
      FOR THE UNDERLYING ACTION TO RESOLVE ................................19

III.   BECAUSE THERE IS NO DUTY TO INDEMNIFY, HARLEYSVILLE HAS NO
      FURTHER OBLIGATION TO DEFEND ................................................21

CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

10 Ellicott Square Court Corp. v. Mt. Valley Indem. Co.,
   634 F.3d 112 (2d Cir. 2010)........................................................................14

Aetna Cas. & Sur. Co. v. Lauria,
   54 A.D.2d 183 (4th Dep't 1976)...................................................................20

Allstate Ins. Co. v. Santiago,
   98 A.D.2d 608 (1st Dep't 1983) ...................................................................21

Allstate v. Zuk,
   78 N.Y.2d 41 (1991) .....................................................................................21

Am. Home Assur. Co. v. Altman Specialty Plants, Inc.,
   No. 08 CIV 7504(PGG), 2009 WL 222158 (S.D.N.Y. Jan. 26, 2009) ....................4

Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.,
   918 F. Supp. 2d 243 (S.D.N.Y.), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins.
   Co., 548 F. App'x 716 (2d Cir. 2013).........................................................20

Avondale Indus., Inc. v. Travelers Indem. Co.,
   774 F.Supp. 1416 (S.D.N.Y. 1991) .............................................................21

Bautista v. Grand Ambulette Serv., Inc.,
   140 A.D.3d 639 (1st Dep't 2016) .................................................................18

Bell v. Angah,
   146 A.D.3d 734 (1st Dep't 2017) .................................................................18

Brice v. State Farm Fire & Cas. Co.,
   761 F. Supp. 2d 96 (S.D.N.Y. 2010).............................................................8

Burlington Insurance Co. v. NYC Transit Authority,
   29 N.Y.3d 313 (2017) ............................................................................14, 15

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).......................................................................................8

Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.,
   2011 U.S. Dist. LEXIS 20985 (S.D.N.Y. 2011)...........................................13

City of N.Y. v. Liberty Mut. Ins. Co.,
   2017 WL 4386363 (S.D.N.Y. Sept. 28, 2017)..............................................22

Cobb Cnty. v. Hunt,
    166 Ga. App. 409 (Ct. App. 1983)...............................................................................13

Colon v. Aetna Life & Cas. Ins. Co.,
    66 N.Y.2d 6 (1985) ...................................................................................................21

Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,
    822 F.2d 267 (2d Cir. 1987)......................................................................................22

Cont'l Ins. Co. v. American Motorist Ins. Co.,
    247 Ga. App. 331 (Ct. App. Ga. 2000) .....................................................................15

Coregis Ins. Co. v. Am. Health Found., Inc.,
    241 F.3d 123 (2d Cir. 2001)......................................................................................11

Dreyer v. N.Y. Cent. Mut. Fire Ins.,
    106 A.D.3d 685 (2d Dep't 2013) ..............................................................................20

Duncan Petroleum Transp., Inc. v. Aetna Ins. Co.,
    96 A.D.2d 942, aff'd, 61 N.Y.2d 665 (1983)............................................................17

Dupuy v. Gonday,
    450 So.2d 1014 (La. Ct. App. 1984)..........................................................................11

Farmers Auto. Ins. Ass'n v. Hunt,
    301 Ill. App. 3d 716, 235 Ill. Dec. 107, 704 N.E.2d 680 (3d Dist. 1998) ...............11

Gestetner v. Teitelbaum,
    52 A.D.3d 778 (2d Dep't 2008) ................................................................................18

Hain v. Jamison,
    28 N.Y.3d 524 (2016) ...............................................................................................19

Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,
    657 So.2d 925 (Fla. Dist. Ct. App. 1995) .................................................................11

In re Howard's Exp., Inc.,
    151 F. App'x 46 (2d Cir. 2005) ..................................................................................4

International Paper Co. v. QBE Insurance Corp.,
    2010 WL 1856193 (M.D. Ala. May 5, 2010) ...........................................................16

Kalland v. Hungry Harbor Assocs., LLC,
    84 A.D.3d 889 (2d Dep't 2011).................................................................................18

Kavowras v. New York Times Co.,
    328 F.3d 50 (2d Cir. 2003)..........................................................................................4

Knight v. U.S. Fire Ins. Co.,
 804 F.2d 9 (2d Cir. 1986) ...................................................................................8

Lancer Ins. Co. v. Garcia Holiday Tours,
 345 S.W.3d 50 (Tex. 2011) ...............................................................................11

Mazella v. Beals,
 27 N.Y.3d 694 (2016) .........................................................................................18

Mid-Continent Cas. Co. v. Advantage Med. Elecs. LLC,
 196 So.3d 238 (Ala. 2015) .................................................................................16

Mork Clinic v. Fireman's Fund Ins. Co.,
 575 N.W.2d 598 (Minn. Ct. App. 1988) ......................................................11, 12

Mortensen v. Mem'l Hosp.,
 105 A.D.2d 151 (1st Dep't 1984) .......................................................................19

Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.,
 88 N.Y.2d 347 (1996) ...................................................................................10, 17

New Hampshire Ins. Co. v. Jefferson Ins. Co.,
 213 A.D.2d 325 (1st Dep't 1995) ..................................................................10, 17

Palp, Inc. v. Williamsburg Nat'l Ins. Co.,
 200 Cal. App. 4th 282 (Ct. App. 2011) .............................................................13

Pension Trust Fund for Operating Eng'rs. v. Federal Ins. Co.,
 307 F.3d 944 (9th Cir. 2002) .............................................................................10

Redland Select Ins. Co. v. Washington,
 2010 U.S. Dist. LEXIS 72072 (W.D.N.Y. 2010) ...............................................13

Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,
 15 N.Y.3d 34 (2010) ...........................................................................................12

Ruggiero v. Aetna Life & Cas. Co.,
 107 A.D.2d 744 (2d Dep't 1985) ........................................................................17

SECURA Supr. Ins. Co. v. M.S.M.,
 755 N.W.2d 320 (Minn. Ct. App. 2008), review denied (Nov. 18, 2008) ..............11

Sellie v. N. Dakota Ins. Guar. Ass'n,
 494 N.W.2d 151 (N.D. 1992) .............................................................................13

St. Paul Fire & Marine Ins. Co. v. Antel Corp.,
 387 Ill. App. 3d 158 (Ill. Ct. App. 2008) ..........................................................11

Stein v. N. Assur. Co. of Am.,
  617 F. App'x 28 (2d Cir. 2015) .................................................................21

Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of N.Y.,
  2018 WL 654445 (E.D.N.Y. Jan. 31, 2018) .............................................22

Sturges Mfg. Co. v. Utica Mut. Ins. Co.,
  37 N.Y.2d 69 (1975) ..................................................................................21

Tomlinson v. Skolnik,
  540 N.E.2d 716 (Ohio 1989), overruled on other grounds by Schaefer v. Allstate Ins.
  Co., 668 N.E.2d 913 (Ohio 1996) ............................................................11

Travelers Indem. Co. v. Gen. Star Indem. Co.,
  157 F.Supp.2d 12473 (S.D. Ala. 2001)......................................................13

U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co.,
  268 A.D.2d 19 (1st Dep't 2000) ................................................................16

Worth Const. Co. v. Admiral Ins. Co.,
  10 N.Y.3d 411 (2008) ................................................................................12

**RULES**

F.R.E. 201(b)..................................................................................................4

Fed. R. Civ. P. 56...........................................................................................8

**OTHER AUTHORITIES**

Black's Law Dictionary 102 (7th ed. 1999)..................................................11

IRMI, "Handling and Movement of Property Exclusions" ...........................15

PJI 2:70 .........................................................................................................19

PJI 2:71 .........................................................................................................18

## PRELIMINARY STATEMENT

Defendant Harleysville Preferred Insurance Company ("Harleysville") submits this brief in support of its motion for summary judgment. Based on the undisputed facts, the Mechanical Device Exclusion contained in Harleysville's commercial auto policy applies, and it therefore has no duty to indemnify Hellman Electric Company ("Hellman"), Triborough Bridge and Tunnel Authority ("TBTA") or the Metropolitan Transit Authority ("MTA").

In finding that Harleysville owed Hellman a duty to defend, the Second Circuit restricted its analysis to the underlying complaint and the bill of particulars – the only documents the Court considered – and did not evaluate the extrinsic and undisputed facts as to how the accident occurred. With respect to the duty to indemnify, however, this Court should consider any and all extrinsic evidence. When taking into consideration the videos of the accident, as well as testimony from the only two eye witnesses who were involved in this accident (besides the decedent), and the other discovery exchanged in the underlying case, it is clear that the *facts* are undisputed. There simply is no material dispute that as Timothy Delaney, an employee of Monarch Electrical Supply ("Monarch"), and Carl Wrynn, an employee of Hellman, attempted to unload a 2,760 pound battery from a truck while using a pallet jack, the battery fell off the back of the truck and fatally injured Nicholas Cavataio. The uncontroverted evidence erases any doubt that Cavataio's injury "resulted from" the use of the pallet jack to move the battery.

The Mechanical Device Exclusion in Harleysville's policy precludes coverage for bodily injury "resulting from the movement of property by a mechanical device (other than a hand truck)[.]" Because there is a clear and unmistakable causal nexus between the use of the pallet jack and the injury suffered by Mr. Cavataio, the exclusion applies, and Harleysville is entitled to summary judgment as a matter of law that it owes no indemnity.

The Court need not delve into which defendant is ultimately liable for the injury, the theories of liability in the underlying litigation, or wait until the conclusion of the underlying case. Regardless of whether there may be other causes of the injury, and regardless of which party is held liable, given the undisputed facts (including a video of the accident), the Court can and should determine that no rational factfinder could conclude anything other than the injury "resulted from" the movement of property by a pallet jack. The Mechanical Device Exclusion's use of the phrase "resulting from" does not hinge on a proximate causal relationship between the mechanical device and the bodily injury. Instead, all that is required to satisfy the "resulting from" language is some causal nexus between the use of the mechanical device (the pallet jack) and the injury. Yet even if the use of the pallet jack must be a "proximate cause" of the bodily injury, Harleysville easily satisfies that standard. That there may be other contributing causes of the accident does not eliminate the use of the pallet jack as a proximate cause of the injury.

The coverage issue is ripe for decision by the Court, and will not be addressed in the underlying personal injury case. In the underlying litigation, a jury may decide whether a *particular party* is negligent, e.g., Monarch, and whether that *party* is the proximate cause of the accident. Here, a *particular party's* culpability is irrelevant; the exclusion concerns only whether the "bodily injury" resulted from the movement of property by the pallet jack. Thus, the Court should not defer making a ruling – as it will have to resolve this issue at some point. Finally, once the Court determines, as it should, that Harleysville owes no indemnity, it should also conclude that Harleysville has no further duty to defend.

For these reasons, Harleysville respectfully requests that the Court grant summary judgment in its favor and dismiss all claims against Harleysville with prejudice.

## STATEMENT OF FACTS

**I.   THE UNDERLYING ACCIDENT**

On August 5, 2014, Mr. Cavataio (a Hellman employee) was performing work pursuant to Hellman's contract with the TBTA. See Declaration of Brooks H. Leonard dated August 31, 2018 ("Leonard Decl."), Ex. A, at 8.   On that day, Monarch was delivering components, including a battery cabinet, to be incorporated into the security system at the Throgs Neck Bridge pursuant to a Hellman purchase order.   To unload the battery cabinet from the truck, Monarch and Hellman employees utilized a pallet jack.   During this process, the battery fell on top of Mr. Cavataio crushing him. See Id., Ex. A, at Exhibit C; Ex. B at 16 of 26.   The accident is captured on video[1] and clearly shows that, as the battery was being manipulated on top of the pallet jack, it and the pallet jack rolled off the back of the truck. See id. at Ex. C.

Monarch's employee Timothy Delaney, testified that on the date of the accident he checked the liftgate on the subject truck and ensured that it was functioning properly. See id., Ex. D at 19-20.   The pump jack (owned by Monarch) was secured in the back of the truck. Id. at 21.   When he arrived at the job site, he reported to the Hellman trailer and a Hellman employee, Carl Wrynn, rode in the cab and told Mr. Delaney exactly where to go to make the delivery. Id. at 23-24.

Mr. Delaney successfully delivered the first pallet by using the pallet jack and the liftgate. Id. at 24-27.   With respect to the battery at issue, Mr. Delaney testified that he placed the forks of the pallet jack under the skid containing the battery, pumped the lever, proceeded to bring the battery to the end of the truck, and moved the pallet jack with the battery onto the liftgate. Id. at 28-29.   He further testified that when they got the battery to the liftgate, he lowered the pump

---

[1] Five videos were produced in the Underlying Action and are maintained in Hellman's defense file.   The TBTA stipulated as to their authenticity on summary judgment. See id. Ex. X.

jack so the weight of the battery was on the liftgate. Id. at 55. He did not touch the liftgate controls. Id. at 29. The battery then started to teeter and Mr. Delaney and Mr. Wrynn could no longer hold the battery. Id. The liftgate was flush with the back of the truck when the battery began to fall. Id. at 58. Once he lowered the pump jack, nothing happened for one or two seconds and then the battery started to teeter. Id. at 77-78. During that one-to-two second period, Mr. Delaney was still holding the pump jack. Id. at 86. As it was falling off the truck, he was attempting to hold onto the pump jack, id. at 81, and the pump jack was under the wood holding the battery on the skid. Id. at 86. He testified that the pump jack and the battery fell together off the back of the truck. Id.

Mr. Wrynn corroborated Mr. Delaney's testimony. See generally id., Ex. E. Notably, he testified that they could not have moved the battery without the assistance of a piece of equipment and that the pallet jack was necessary for them to move the battery. Id. at 63-64. He saw Mr. Delaney grab the handles of the pump jack when the battery started to fall. Id. at 79-80.

The videos fully corroborate the testimony of the only two surviving eye witnesses.

## II.   THE UNDERLYING ACTION

### A.   Procedural Posture

On or about November 17, 2014, Cavataio's estate filed a verified complaint in the Supreme Court of New York, Bronx County captioned Rosanne Cavataio, et al. v. Metropolitan Transportation Authority, et al., bearing Index Number 25425/2014E (the "Underlying Action"), asserting counts against the MTA, Eaton Corp. (the manufacturer of the battery), Miller Auto, Monarch, and the TBTA.[2]  See id., Ex. F. Hellman was not named as a direct defendant in the

---

[2] This Court may take judicial notice of the documents filed on the docket in the Underlying Action. See, e.g., Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings[.]"); In re Howard's Exp., Inc., 151 F. App'x 46, 48 (2d Cir. 2005) ("[W]e are empowered to take judicial notice of public filings[.]"); see also F.R.E. 201(b); Am. Home Assur. Co. v. Altman Specialty Plants, Inc., No. 08 CIV 7504(PGG), 2009 WL 222158, at *4 (S.D.N.Y. Jan. 26, 2009).

Underlying Action, but on or about January 15, 2015, the MTA and the TBTA filed a third-party complaint against Hellman.  See id. at Ex. G.  The third-party complaint against Hellman seeks, among other things, contractual indemnification.  See id.  Monarch and Miller Auto have also sued Hellman for common law indemnification and contribution.  See id. Ex. H & I.

**B.      Discovery in the Underlying Action**

The deposition testimony given by Mr. Delaney and Mr. Wrynn in this Action is consistent with that obtained in the Underlying Action.  See generally Leonard Decl., Exs. J & K.  Mr. Delaney testified that he moved the subject battery cabinet with the pallet jack to the liftgate, positioned it on the liftgate, and let the pallet jack down so it was flush against the liftgate for approximately five seconds before the battery cabinet fell off the back of the truck. See id., Ex. J at 74-78; 112; 166-67, 209.  Mr. Delaney had no discussions with Mr. Wrynn about using a forklift and it "didn't occur" to him that he should use straps to secure the battery cabinet to the pallet jack because he "thought it was moveable."  Id. at 73.  He testified that if he had known that the cabinet weighed as much as it did, he would have asked for more manpower or "proper equipment" such as a loading dock or a forklift to complete the delivery.  Id. at 94-95. The parking lot where he parked the truck was flat and level.  See id. at 56, 195-96.

Mr. Wrynn testified that there was a forklift at the job site although he did not recall there being one at the site on the day of the accident.  See id. Ex. K at 90-91.  He further recalled that at the moment the battery cabinet started to roll off the liftgate, he believed that he and Mr. Delaney were standing at least partially on the liftgate.  See id. at 157, 169.  He testified that Mr. Delaney was "trying to get" the battery square on the liftgate just before it started falling and that it appeared that the battery was rolling toward the edge of the liftgate.  Id. at 160, 161.

A representative of Eaton testified that the instruction manual provided that the battery cabinet could be moved by forklift or pallet jack.  Id., Ex. L at 38-39.  He clarified, however, that

the manual speaks only to movement within the inside of a building, not off the back of a truck. Id. at 109.  Notably, based on his review of the videos, he opined that a pallet jack should have been used inside the truck and a fork lift should have been used to take the battery cabinet off the truck.  Id. at 117-19.  A representative of the construction manager suggested that Monarch did not have the proper equipment for the delivery because they came with a truck that had a 3000 pound capacity on the liftgate to unload a battery cabinet that weighed almost that much.  See Ex. M at 94-95.  He noted that a forklift would have done the job easily and safely.[3]  Id. at 95-96.

OSHA issued a citation to Hellman[4], which describes the incident involving the unloading of the battery with the pallet jack and concludes that "[t]he employees lost control of the cabinet while moving it on the elevated lift gate of the box truck, resulting in it falling off the lift gate and crushing an employee on the ground below."  See id., Ex. N at 6.

### C.   The Summary Judgment Motions

Plaintiffs moved for summary judgment in the Underlying Action against the MTA/TBTA under New York Labor Law § 240, arguing that Mr. Delaney:

> [F]ailed to use safety straps to secure the 2700 pound battery cabinet in removing it off of the truck (in direct violation of the rules manual).  Additionally, Delaney from MONARCH used inadequate and unsafe equipment to move the battery off of the truck again violating the rules manual.  Specifically, he used a pallet jack when he should have used a forklift and managed to misuse the pallet jack as well – in direct violation of the rules manual.

[See id., Ex. O, at ¶ 6.]

On August 16, 2018, the court in the Underlying Action filed orders resolving the motions for summary judgment.  See id., Ex. P.  Most notably, the court granted plaintiffs' motion for summary judgment against the MTA/TBTA on the § 240 claim finding that "contrary

---

[3] Monarch's expert also indicates that a fork truck would have been a more appropriate to use.  See id., Ex. Y., at ¶ 11.

[4] See id. Ex. Z.

to defendants' contentions, decedent's accident squarely falls within the ambit of the statute; the battery cabinet fell due to the absence or inadequacy of a safety device[.]" Because the court found that the MTA/TBTA had demonstrated that they are "only statutorily liab[le] to plaintiff," the court also conditionally granted the MTA/TBTA's motion for common law indemnity against Monarch pending a final determination of Monarch's negligence. The court held that Miller Auto was "not free from" fault and, therefore, was not entitled to indemnification from Monarch.

## III. THE POLICIES

Wausau issued a general liability policy to Hellman in effect on the date of the accident (the "Wausau Policy"). See Leonard Decl., Ex. Q at WAU375. Harleysville, meanwhile, issued a Business Auto Policy to Hellman in effect on the date of the accident (the "Harleysville Policy"). The Harleysville Policy does not identify the MTA or TBTA as named or additional insureds. See id., Ex. R.

## IV. THE DECLARATORY JUDGMENT ACTION

Wausau filed the instant declaratory judgment action against Harleysville seeking a declaration that Harleysville is required to defend and indemnify Hellman, the MTA, and the TBTA on a primary basis in connection with the Underlying Action. See id., Ex. S. After the defendants filed answers (see id. Exs. T & U), Wausau moved for summary judgment on the duty to defend. This Court entered an order denying Wausau's motion for summary judgment, and entered judgment against Wausau, which order and judgment were subsequently reversed (in part) and vacated by the Second Circuit. See id. Ex. V. On remand, this Court filed an order authorizing the parties to file summary judgment motions on the duty to indemnify by August 31, 2018. See id. Ex. W.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure states that the "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The moving party bears the initial burden of showing the absence of a disputed issue of material fact, and the burden then shifts to the non-moving party to present specific evidence that demonstrates the existence of a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (holding that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").  When considering a motion for summary judgment, the "court's responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

Where, as here, there are no disputed issues of fact, the interpretation of an insurance policy is a question of law for the Court to decide which is properly resolved on summary judgment pursuant to Fed. R. Civ. P. 56.  Brice v. State Farm Fire & Cas. Co., 761 F. Supp. 2d 96, 98 (S.D.N.Y. 2010).

In support of its motion, Harleysville relies on its Local Rule 56.1 Statement of Material Facts submitted herewith.

# LEGAL ARGUMENT

## I.   THE MECHANICAL DEVICE EXCLUSION PRECLUDES COVERAGE UNDER THE HARLEYSVILLE POLICY FOR HELLMAN, THE TBTA, AND THE MTA.

Based on the undisputed facts, Harleysville owes no obligation to indemnify Hellman, the MTA, or the TBTA in connection with the Underlying Action because the Mechanical Device Exclusion in the Harleysville Policy precludes coverage.

### A.   The Accident Resulted from the Movement of Property by the Pallet Jack

The Mechanical Device Exclusion provides as follows:

B. Exclusions

This insurance does not apply to any of the following.

\* \* \*

8.   Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck[5]) unless the device is attached to the covered "auto".

[Leonard Decl., Ex. R at HPIC001315.]

The Mechanical Device Exclusion is clear and unambiguous, and precludes coverage for all bodily injury "*resulting from* the movement of property by a mechanical device" such as the pallet jack at issue here. Id. (emphasis added).

Although there does not appear to be a published New York decision construing the "resulting from" language in the liability context, that language is akin to the phrase "arising out of." See generally Couch on Insurance § 101:52 ("The phrases are generally considered to mean 'flowing from' or 'having its origin in' [and] merely require[] some causal relation or

---

[5] Wausau abandoned its argument that the pallet jack" or "pump jack" to move the battery was a "hand truck" and it is therefore undisputed that the pump jack is a "mechanical device" within the meaning of the Harleysville Policy.

connection."); <u>see also</u> <u>New Hampshire Ins. Co. v. Jefferson Ins. Co.</u>, 213 A.D.2d 325, 328 (1st Dep't 1995) (construing "arising out of" to mean "resulting from").

In <u>Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.</u>, 88 N.Y.2d 347, 351 (1996), the Court of Appeals held that when a policy contains an exclusionary clause with language like "resulting from", the theory of liability asserted against the insured cannot overcome the application of the exclusion. There, an underlying plaintiff asserted a negligence action based on an assault that took place inside of a building. 88 N.Y.2d at 352. The victim of the assault sued the owner of the building alleging negligent supervision, management and control of the premises. The carrier denied coverage on the basis of an exclusionary clause providing that "no coverage shall apply under this policy for any claim, demand or suit *based on* Assault and Battery ..." <u>Id.</u> at 350 (emphasis added). In resolving the coverage issue, the Court stated:

> While the [owner]'s negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the [owner]'s right to coverage based on the language of the contract between him and the insurer. *Merely because the insured might be found liable under some theory of negligence does not overcome the policy's **exclusion** for injury resulting from assault . . . .*

<u>Id.</u> at 352 (emphasis added) (utilizing term "resulting from" interchangeably with policy exclusion language of "based on", and finding that "there is no significant difference between the meaning of the phrases "based on" and "arising out of" in the coverage or exclusion clauses of policy).

Because, as the Court acknowledged in <u>Mount Vernon</u>, there is no appreciable difference in the language, the "resulting from" language found in the Mechanical Device Exclusion should be interpreted in the same manner as the "arising out of" language. Indeed, the majority view across the country is that the phrase "resulting from" is synonymous with the phrase "arising out of." <u>See</u> <u>Pension Trust Fund for Operating Eng'rs. v. Federal Ins. Co.</u>, 307 F.3d 944 (9th Cir.

2002) (finding under California law that "as a result of" and "arising out of" should be interpreted the same way); <u>SECURA Supr. Ins. Co. v. M.S.M.</u>, 755 N.W.2d 320, 326–27 (Minn. Ct. App. 2008), <u>review denied</u>, (Nov. 18, 2008) (both mean "causally connected, not proximately caused by"); <u>Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 657 So.2d 925 (Fla. Dist. Ct. App. 1995) (finding no difference between the two terms because the words "arising" and "resulting" are generally regarded as synonyms); <u>St. Paul Fire & Marine Ins. Co. v. Antel Corp.</u>, 387 Ill. App. 3d 158, 165 (Ill. Ct. App. 2008) ("[T]he phrase 'resulting from' is synonymous with the phrases 'arising out of.' . . . Accordingly, 'but for' causation rather than proximate causation satisfies this language."); <u>Dupuy v. Gonday</u>, 450 So.2d 1014, 1016 (La. Ct. App. 1984) (finding the difference between "arising out of" and "resulting from" to be "one of style, and not of substance"); <u>Mork Clinic v. Fireman's Fund Ins. Co.</u>, 575 N.W.2d 598, 602 (Minn. Ct. App. 1988) ("'Resulting from' has the same ordinary and plain meaning as 'arising out of.'"); <u>Tomlinson v. Skolnik</u>, 540 N.E.2d 716, 720 (Ohio 1989) (holding that "arising out of" is synonymous with "because of," "due to," and "resulting from"), <u>overruled on other grounds by</u> <u>Schaefer v. Allstate Ins. Co.</u>, 668 N.E.2d 913 (Ohio 1996); <u>Lancer Ins. Co. v. Garcia Holiday Tours</u>, 345 S.W.3d 50 (Tex. 2011) (finding that the analysis is the same whether the policy requires that an injury "result from" or "arise out of" the covered auto's use); <u>Farmers Auto. Ins. Ass'n v. Hunt</u>, 301 Ill. App. 3d 716, 235 Ill. Dec. 107, 704 N.E.2d 680, 682 (3d Dist. 1998) ("The phrase at issue, 'resulting from,' is synonymous with the phrases 'arising out of,' 'connected with,' 'originating from,' 'growing out of,' and 'flowing from'"); <u>see also</u> <u>Coregis</u> <u>Ins. Co. v. Am. Health Found., Inc.</u>, 241 F.3d 123, 128 (2d Cir. 2001) (construing Connecticut law) ("To 'arise' out of means 'to originate from a specified source.'" citing Webster's Third New International Dictionary 117 (1986) and Black's Law Dictionary 102 (7th ed. 1999)

(defining "arise" as . . . 2. To result (from)").  Courts have held that the broad interpretation of those terms applies equally to both coverage grants and exclusions.  See Actavis, 16 Cal. App. 5th at 1048; Mork, 575 N.W.2d at 602.

Under New York law, "arising out of" is broadly construed as '"originating from, incident to, or having connection with' and requires 'only that there be some causal relationship between the injury and the risk for which coverage is provided.'"  Worth Const. Co. v. Admiral Ins. Co., 10 N.Y.3d 411, 415 (2008); see also Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 38 (2010)).  Since "resulting from" should be interpreted in the same manner as "arising out of", Harleysville need only demonstrate that there was some causal relationship between the two, and that the injury originated from or had a connection with the use of the pallet jack.  Here, the video and testimonial evidence indisputably demonstrate that Cavataio's death grew out of, is connected with, and originated from the use of the pallet jack. Indeed, the evidence directly establishes that the pallet jack was being used to move the battery at the time both the battery and the jack fell from the truck, and in fact it is undisputed that the the battery remained in contact with the jack as they rolled off the liftgate.  See generally Leonard Decl., Ex. C.

No one disputes that Mr. Delaney used the pallet jack to move the battery from the back of the truck to the liftgate.  Id., Ex. D at 28-29.  Although the hydraulics had been disengaged, id. at 55, the forks had not been removed from under the battery at the time that the battery and pallet jack fell off the back of the truck.  Id. at 86.  Mr. Delaney testified that he literally was holding onto the handles of the jack as the battery fell and tried to pull the pallet jack with the battery back onto the truck to prevent it from falling.  Id. at 81, 86.  Mr. Wrynn and Mr. Delaney were trying to get the pallet jack square on the liftgate when it rolled off.  Id., Ex. K at 160-61.  It

is further uncontroverted that the battery could not have been moved without the assistance of the pallet jack.  See id., Ex. E at 63-64.  Perhaps most compellingly, the video evidence fully supports the testimony of Mr. Delaney and Mr. Wrynn, and clearly shows the pallet jack rolling off the back of the truck with the battery.  See id., Ex. C.  The undisputed facts therefore demonstrate that Mr. Cavataio's injuries "resulted from" (i.e., originated from, was incident to, grew out of, and was connected with) the use of the pallet jack to move the battery off of the truck.

Because the undisputed facts unequivocally establish that the underlying plaintiff's injuries resulted from the movement of property (the battery) by a mechanical device (the pallet jack) which was not connected to any auto, the Mechanical Device Exclusion applies to preclude coverage to Hellman, MTA and TBTA for the Underlying Action.  Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co., 2011 U.S. Dist. LEXIS 20985, *21 (S.D.N.Y. 2011) (enforcing mechanical device exclusion under New York law); Redland Select Ins. Co. v. Washington, 2010 U.S. Dist. LEXIS 72072, *6-7 (W.D.N.Y. 2010) (same).[6]

### B.    The Language of the Mechanical Device Exclusion Demonstrates that Proximate Cause is Not Required

The plain language of the exclusion confirms that proximate causation is not required. That is, the exclusion does not speak in terms of an *actor* whose negligent act or omission can be

---

[6] Some courts appear to require even less than a causal nexus, holding that the inquiry stops once it is determined that a mechanical device was used in the unloading process.  See, e.g., Travelers Indem. Co. v. Gen. Star Indem. Co., 157 F.Supp.2d 12473 (S.D. Ala. 2001) (accepting argument that the inquiry ends once it is determined whether a mechanical device was used in the loading process and concluding that "[c]overage extends to injuries sustained during the movement of property, but only where the movement is being accomplished by means of a hand truck or other mechanical device attached to the [covered auto]"); Cobb Cnty. v. Hunt, 166 Ga. App. 409, 410 (Ct. App. 1983) ("We construe the policy on the truck, as limited by the quoted [mechanical device] exclusion, to extend liability coverage to injuries sustained during loading or unloading of the truck, but only where the loading or unloading is not being accomplished by means of a mechanical device."); Palp, Inc. v. Williamsburg Nat'l Ins. Co., 200 Cal. App. 4th 282, 294 (Ct. App. 2011); see also Sellie v. N. Dakota Ins. Guar. Ass'n, 494 N.W.2d 151, 156 (N.D. 1992).

considered the proximate cause of the bodily injury.   Instead, the exclusion refers -- in the passive voice -- to the "movement" of property.   It would defy well-settled principles of policy interpretation to read into the exclusion a proximate causation requirement when the language itself does not reference an actor, but merely an activity.   See 10 Ellicott Square Court Corp. v. Mt. Valley Indem. Co., 634 F.3d 112, 119 (2d Cir. 2010) (a court simply "cannot disregard 'the plain meaning of the policy's language[.]'") (citation omitted)).

This conclusion is supported by the Court of Appeals' decision in Burlington Insurance Co. v. NYC Transit Authority, 29 N.Y.3d 313 (2017), which addressed policy language that unlike the Mechanical Device Exclusion, referred explicitly to the conduct of an actor.   There, the Court held that additional insured endorsements that provide coverage for liability "caused, in whole or in part, by the acts or omissions of the named insured" provide coverage to an additional insured only for injury that is proximately caused by the named insured.   Quite the opposite, the Mechanical Device Exclusion at issue here is implicated when injury results from certain conduct -- the use of an unattached mechanical device to move property.   The exclusion does not tie the use of the mechanical device to a particular insured or to even a particular person.   Thus, it would do violence to the actual language of the exclusion to require proximate causation when the policy language itself does not identify an actor to whom negligence must be attributed in order for the exclusion to apply.[7]   Accordingly, the Mechanical Device Exclusion does not require a showing of proximate cause based on the plain language of the exclusion.

### C.     The Harleysville and Wausau Policies are Mutually Exclusive

The Harleysville and Wausau Policies mirror each other as respect loading and unloading and coverage for the use of mechanical devices.   The plain policy language of the policies -- both

---

[7] The Second Circuit declined to address whether the Mechanical Device Exclusion requires a showing of "proximate causation," even though the parties submitted supplemental briefing on that issue, as directed after oral argument.   See id., Ex. V.

of which are written on ISO[8] forms -- provides that the Wausau Policy excludes coverage for loading and unloading except that "loading and unloading" does not include the movement of property by means of a mechanical device (other than a hand truck). See Leonard Decl., Ex. Q at WAU400. On the other hand, the Harleysville Policy provides coverage for loading and unloading except when the loading and unloading is accomplished by means of precisely such a mechanical device. See id., Ex. R at HPIC001315. The policies purchased by Hellman thus complement each other and are intended to cover different risks.

The Mechanical Device Exclusion reflects the division of risk between the two types of policies. See generally IRMI, "Handling and Movement of Property Exclusions"[9] ("These exclusions eliminate coverage for an exposure that would be covered under a commercial general liability (CGL) insurance policy, i.e., the handling of property except when the handling of it is included in the process of 'loading or unloading' an auto. The movement of property by a mechanical device also comes under the CGL policy unless the device is attached to a covered auto. . . . BAP and CGL policy provisions are designed to be a reverse image of each other so that no overlapping of coverage—and no coverage gaps—result.").

Indeed, courts have consistently upheld the division of risks between auto and GL carriers. See Cont'l Ins. Co. v. American Motorist Ins. Co., 247 Ga. App. 331, 331 (Ct. App. Ga. 2000) (enforcing mechanical device exclusion in commercial auto policy and finding coverage under the commercial general liability carrier's policy in litigation almost identical to this one involving injury due to a pallet jack); see also Mid-Continent Cas. Co. v. Advantage Med. Elecs. LLC, 196 So.3d 238, 245 (Ala. 2015) ("The purpose of the auto exclusion in the CGL policy is

---

[8] ISO or Insurance Services Office, Inc. is an insurance trade organization that provides model insurance forms and policy language. See Burlington, 29 N.Y.3d at 318.

[9] Available at https://www.irmi.com/online/cai/ch008/1l08d000/al08d040/bl08d040g-handling-and-movement-of-property-exclusions.aspx (last visited August 29, 2018).

to proscribe coverage for liability that should more properly fall under an automobile-liability policy."). The District Court in International Paper Co. v. QBE Insurance Corp., 2010 WL 1856193, *2 (M.D. Ala. May 5, 2010) recognized that the auto policy and general liability policy at issue there "provide interlocking coverage—what one excludes, the other covers." The court further observed that the GL policy "excludes from commercial liability coverage any injury resulting from loading and unloading, but provides an exception for injury resulting from the movement of property by means of a mechanical device" while the auto policy "covers liability resulting from loading and unloading, but excludes from commercial automobile coverage any injury resulting from the movement of property by a mechanical device." Id. In short, because it is undisputed that the pallet jack was being used to move the battery when it fell, the Mechanical Device Exclusion serves to preclude coverage under the Harleysville policy, and it is the Wausau general liability policy that should apply.

### D. Harleysville has no Duty to Indemnify Notwithstanding the Theories of Liability in the Underlying Action

The theories of liability contained in the Verified Bill of Particulars do not preclude application of the Mechanical Device Exclusion with respect to the duty to indemnify. Here, it is the "operative act," i.e., the use of the pallet jack, and not the theory of liability, that controls whether the Mechanical Device Exclusion applies for purpose of indemnity.

"[I]t is the act giving rise to liability that is determinative [of coverage responsibility], not the theories of liability alleged. . . ." U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co., 268 A.D.2d 19, 23 (1st Dep't 2000). "[T]he mere fact that [an insured] could be found liable on [an] independent theory of recovery does not alter the operative act giving rise to the accident . . . ." Id. at 24; accord New Hampshire Ins. Co., 213 A.D.2d at 330; see also Mount Vernon, 88 N.Y.2d at 352 (merely because the insured might be found liable under a theory of negligence

does not overcome the policy's exclusion for intentional conduct when "the operative act giving rise to any recovery is the assault"); Ruggiero v. Aetna Life & Cas. Co., 107 A.D.2d 744, 745 (2d Dep't 1985) ("While [the insured's] acts may have been a proximate cause of [underlying plaintiff's] injuries, that is only determinative of the underlying liability of the insured.   An insurance policy, however, is in essence a contract and must be construed in accordance with the intent of the parties as expressed in the clear language of the policy."); Duncan Petroleum Transp., Inc. v. Aetna Ins. Co., 96 A.D.2d 942, 943 (2d Dep't), aff'd, 61 N.Y.2d 665 (1983) ("[The insured] seeks to avoid the impact of the clear, expansive exclusion in the policy by attributing alleged nonexcluded factors as causes of the accident. . . [The insured's] factors of causation serve to do no more than provide reasons or subfactors explaining why the accident arose out of the loading or unloading of the vehicle. . . . Whatever the originating reason for the explosion, it arose out of the use of the vehicles while they were being loaded.").

Therefore, regardless of what theory of liability is assessed against Hellman, MTA or TBTA, whether it is the failure to maintain a defective liftgate on the truck, improper parking of the truck, or the failure to use a loading dock, the Harleysville Policy's Mechanical Device Exclusion applies to bar coverage for all of these theories of liability because the injury resulted from the use of the pallet jack to move property -- the operative act.   Harleysville is entitled to summary judgment that it has no obligation to indemnify.

### E.    Even if Proximate Cause Is Required, Harleysville Is Entitled to Summary Judgment

Even if the phrase "resulting from" found in the Mechanical Device Exclusion required a showing of proximate causation, the facts of this matter nonetheless demonstrate that the use of the pallet jack was a proximate cause of the accident.

It is beyond dispute that an accident may have more than one proximate cause.  Mazella v. Beals, 27 N.Y.3d 694, 706 (2016) ("The mere fact that other persons share some responsibility for plaintiff's harm does not absolve defendant from liability because 'there may be more than one proximate cause of an injury'." (citation omitted)); Argentina, 93 N.Y.2d at 560 n.2; Bell v. Angah, 146 A.D.3d 734, 734 (1st Dep't 2017) ("An accident may have more than one proximate cause."); Bautista v. Grand Ambulette Serv., Inc., 140 A.D.3d 639, 640 (1st Dep't 2016) ("[I]t is well established that there can be more than one cause of an accident[.]"); Kalland v. Hungry Harbor Assocs., LLC, 84 A.D.3d 889, 889 (2d Dep't 2011) ("[T]here may be more than one proximate cause of an accident[.]"); Gestetner v. Teitelbaum, 52 A.D.3d 778, 778 (2d Dep't 2008) ("There may be more than one proximate cause of an accident[.]); see also N.Y. Pattern Jury Instruction 2:70 Proximate Cause–In General ("There may be more than one cause of an injury . . . , but to be substantial, it cannot be slight or trivial."); N.Y. PJI 2:71 Proximate Cause—Concurrent Causes ("There may be more than one cause of an injury. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.").

The plain language of the exclusion does not require that the mechanical device be the *sole* cause of the accident.  So long as the pallet jack was *a* proximate cause of the bodily injury, the Mechanical Device Exclusion applies, and Harleysville is entitled to summary judgment as a matter of law.  Generally speaking, a proximate cause is one that is a "substantial factor" in bringing about the injury or accident.  Hain v. Jamison, 28 N.Y.3d 524, 528–29 (2016) ("The overarching principle governing determinations of proximate cause is that a 'defendant's negligence qualifies as a proximate cause where it is 'a substantial cause of the events which

produced the injury'" (citation omitted)); see also PJI 2:70 ("An act or omission is regarded as a cause of an injury . . . if it was a substantial factor in bringing about the injury . . . , that is, if it had such an effect in producing the injury . . . that reasonable people would regard it as a cause of the injury[.]"); see also Mortensen v. Mem'l Hosp., 105 A.D.2d 151, 159  (1st Dep't 1984) ("[T]o be actionable the defendant's negligence must, more probably than not, bring about the plaintiff's injury.").

Clearly the use of the pallet jack was a substantial factor in bringing about the death of the decedent and the same facts that demonstrate the causal link to the accident and the use of the pallet jack in Point I.A., supra, establish that the use of the pallet jack was a proximate cause of the injuries.  In addition, due to the size of the battery, it is undisputed that Mr. Delaney needed to use equipment to move the battery cabinet so it could be unloaded.  Leonard Decl., Ex. E 63-64.  Mr. Delaney selected the pallet jack, engaged the hydraulics, and moved the battery towards the liftgate.  The battery was on the pallet jack, which was being maneuvered on to the liftgate, just before it fell and killed Mr. Cavataio.  Accordingly, the use of the pallet jack was a substantial factor.

In short, even if some other conduct was a proximate cause of the injury [such as the failure to maintain the liftgate], the undisputed facts set forth above demonstrate that the use of the pallet jack was also a proximate cause of the injury.  Accordingly, the Mechanical Device Exclusion applies to preclude coverage under the Harleysville Policy and this Court should enter summary judgment in favor of Harleysville.

## II.  THIS COURT SHOULD RESOLVE THE COVERAGE ISSUE AND NOT WAIT FOR THE UNDERLYING ACTION TO RESOLVE

Wausau has previously asserted that any determination concerning indemnity should await liability findings in the Underlying Action.  Yet Wausau should hardly be heard to

complain since it filed this lawsuit seeking a declaration that Harleysville is obligated to indemnify Hellman, the MTA, and the TBTA in connection with the Underlying Action. More importantly, Wausau is wrong.

It is entirely appropriate for this Court to determine the scope of Harleysville's duty to indemnify within the context of this declaratory judgment action. See Aetna Cas. & Sur. Co. v. Lauria, 54 A.D.2d 183, 185 (4th Dep't 1976); see also Dreyer v. N.Y. Cent. Mut. Fire Ins., 106 A.D.3d 685, 688 (2d Dep't 2013). Courts have recognized that insurers such as Harleysville have a right to a determination of coverage in a declaratory judgment action. See, e.g., Lauria, 54 A.D.2d at 186 ("Aetna has the right in this case to have the issues of whether the vehicle was being operated without permission and by whom it was operated resolved now in this declaratory judgment action.").

Of course, "to the extent that the questions about insurance coverage which arise in the declaratory judgment action can be separated from the issues of liability and causation that are being litigated in the underlying lawsuit, there is far less reason to withhold judgment on the question of indemnification." Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 261 (S.D.N.Y.), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., 548 F. App'x 716 (2d Cir. 2013). Such is the case here: this Court's judgment will not impair or depend on any factual determinations to be made in the Underlying Action. Clearly the verdict sheet in the Underlying Action will not include a question about whether the *pallet jack* was a cause or a proximate cause of the accident. Rather, the question for the jury will be whether any of the *defendants' negligence* was a proximate cause of the decedent's injuries. The issues are distinct and there will be no overlap. To that point, if this Court does not decide the indemnity issues, this case will still need to be decided after the Underlying Action is over because the jury in that

case will not answer the relevant factual question at issue here – whether the injury resulted from the movement of property by the use of the pallet jack. The Court will ultimately need to reach this issue.

This Court should therefore reach the merits and grant summary judgment in Harleysville's favor.

## III.   BECAUSE THERE IS NO DUTY TO INDEMNIFY, HARLEYSVILLE HAS NO FURTHER OBLIGATION TO DEFEND

New York courts consistently recognize that the duty to defend is not an "interminable one" and "will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." Sturges Mfg. Co. v. Utica Mut. Ins. Co., 37 N.Y.2d 69, 74 (1975); see also Stein v. N. Assur. Co. of Am., 617 F. App'x 28, 30 (2d Cir. 2015) (same); Avondale Indus., Inc. v. Travelers Indem. Co., 774 F.Supp. 1416, 1424 (S.D.N.Y. 1991) ("[W]here a court can determine conclusively that there is no genuine dispute as to an extrinsic fact which when applied to the underlying allegations limits them to a claim not covered by the policy, the insurer no longer need defend."). As such, "an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured[.]" Allstate v. Zuk, 78 N.Y.2d 41, 45 (1991); see also Colon v. Aetna Life & Cas. Ins. Co., 66 N.Y.2d 6, 10 (1985) ("[T]he insurer should be entitled to obtain a prompt judicial determination, whether by summary judgment, declaratory judgment or otherwise that, contrary to the allegations of the personal injury plaintiff's complaint . . . the insurer is not obligated by its contract of insurance to furnish a defense[.]"); Allstate Ins. Co. v. Santiago, 98 A.D.2d 608, 608, (1st Dep't 1983) ("However, 'the policy in this State has been to deny the declaratory judgment where the matter in dispute can be determined in the basic negligence action but to permit the action when the dispute is such that it depends on matters

outside of the negligence action or will not arise in the negligence action as a part of the lawsuit.'" (citation omitted)); see also Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 273 (2d Cir. 1987) ("[M]any New York cases recognize that an insurer may withdraw on various grounds after undertaking the defense of an action."); Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of N.Y., 2018 WL 654445, at *9 (E.D.N.Y. Jan. 31, 2018) ("New York State law recognizes a narrow exception to the duty to defend, which permits . . . a withdrawal during the course of litigation, if extrinsic evidence to the complaint or insurance policy is "unrelated to the merits of the plaintiff's action [and] plainly take[s] the case outside the policy coverage." (quoting Allan Windt, Insurance Claims and Disputes § 4:4 at pp. 293-94)).

A recent opinion out of the Southern District of New York is instructive. City of N.Y. v. Liberty Mut. Ins. Co., 2017 WL 4386363, *13 (S.D.N.Y. Sept. 28, 2017).[10]   There, Judge Nathan recognized that "the Second Circuit—even as it has disclaimed insight into the precise contours of New York law on this question—has suggested that extrinsic evidence may terminate the duty to defend in certain circumstances." Id. at *12.  The court then assumed that extrinsic evidence may form the basis of a successful motion to terminate the duty to defend.  Id. However, Judge Nathan ultimately held that "the extrinsic evidence that Defendant has presented goes to an issue relevant to the merits of the underlying complaints.  Under clearly established New York law, then, such evidence cannot justify Liberty's refusal to defend or provide a basis, in a collateral proceeding, for a declaration terminating that duty." Id. at *13 (emphasis added).

---

[10] It is notable that in City of New York, Liberty Mutual Insurance Company -- a sister company of Wausau -- specifically argued that it could terminate its duty to defend in that declaratory judgment action—based on extrinsic facts. Id. at *12. Although Liberty Mutual was ultimately unsuccessful, its position in that case lies in stark contrast to the tactic that Wausau is taking in the instant matter.

By contrast, and for the same reasons set forth in Point II, supra, the issue on which Harleysville seeks a declaration will not be determined in the Underlying Action. As such, this Court can determine that Harleysville has no further duty to defend.

Accordingly, because there is no duty to indemnify Hellman, the MTA, or the TBTA in the Underlying Action due to the clear and unambiguous Mechanical Device Exclusion, Harleysville should have no further duty to defend.

## CONCLUSION

For all the above reasons, Harleysville respectfully requests that this Court grant Harleysville's motion for summary judgment, dismiss with prejudice all claims asserted against it, enter an order declaring that the Mechanical Device Exclusion applies to preclude coverage under the Harleysville Policy for Hellman, the MTA, and the TBTA in connection with the Underlying Action, and enter an order declaring that Harleysville has no further obligation to defend Hellman in the Underlying Action.

Respectfully submitted,

RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Attorneys for Defendant, Harleysville Preferred
Insurance Company

By:____*/s/ Lance J. Kalik*_____
    Lance J. Kalik (LK-4677)

Date: August 31, 2018

4979476v3

23